## MINOR *et al. v.* THE CITY OF SAN FRANCISCO.

For the points decided in this case, see the case of Joseph Woods *v.* The City of San Francisco, 4 Cal. R., 190.

APPEAL from the District Court of the Fourth Judicial District, County of San Francisco.

The complaint in this case alleges that the city of San Francisco was the owner and proprietor of Pacific-street Wharf; that on the eighth day of July, William Webster purchased the said wharf at sheriff's sale, under an execution in favor of Peter Smith, and against the said city, for the sum of $5,000; that on the 18th day of March, 1851, the sheriff executed a deed therefor, which said deed was duly recorded; that subsequently, the said Webster sold his interest in said property to the plaintiffs, and that William Hooper, John Middleton, Henry Haight, D. J. Tallant, and William A. Lent, claim to hold the said property by virtue of a deed of trust from the Commissioners of the Funded Debt of San Francisco in trust for the said city, and receive the rents, issues and profits, for the use and benefit of said city, and that they continue to hold the same from the plaintiffs, who are entitled to the possession thereof.   Complaint prays for a decree of Court against the defendants for the possession of the premises.

To this complaint the defendants filed a demurrer, on the ground that it did not contain facts sufficient to constitute a cause of action.   Defendants had judgment, and plaintiffs appealed.

*Baldwin and Osborn* for Appellants.

The Sinking Fund Commissioners claimed only by virtue of the ordinances and acts of the city of San Francisco.   They

claimed the property of the city, and hold it under that claim, and by virtue of the trusteeship created by the city.

The city had possession of Pacific Wharf before the deed to the Sinking Fund Commissioners. The Sinking Fund Commissioners leased the wharf to Roberts & West, on the thirteenth of February, one thousand eight hundred and fifty-one; lessees to build wharf, and to pay ten per cent. of gross proceeds, and the wharf, at the end of the lease, to revert to the city. Lease expired March thirteenth, one thousand eight hundred and fifty-six.

On the twenty-fifth of March, one thousand eight hundred and fifty-one, judgment, Smith *v.* The City; tenth of March, execution levied; fourteenth, judgment recorded; March twenty-sixth, one thousand eight hundred and fifty-one, Water-Lot Bill was passed, fixing permanent water-front, and giving lands inside, to the city, (which did not include the wharf.) May first, one thousand eight hundred and fifty-one, act authorizing city to build wharves at the end of streets to a distance of six hundred feet from the water front. May first, one thousand eight hundred and fifty one, establishing Board of Commissioners of Funded Debt of the city, and directing conveyance to them of lands, etc., deeded to Commissioners of Sinking Fund; June nineteenth, one thousand eight hundred and fifty-one, deed in pursuance of act.

July eighth, one thousand eight hundred and fifty-one, sheriff's sale to our predecessor, of Pacific Wharf.

May first, one thousand eight hundred and fifty-one, act confirming and ratifying the lease to Roberts & West; but not waiving or impairing any lien or judgment. See Acts App., p. 1.

But one question arises:

Did this wharf pass by the sheriff's sale?

This question is to be determined by two things: What is the nature of this property? And what sort of interest did the city have in it? That, upon principle, a wharf may be sold as much as a house, or, if we regard it as personalty, as the materials which make the house, would seem to be clear enough. That it is a tangible thing, subject to levy and sale, is clear. It is no objection to say that the wharf is the property of a corporation, not even if it were so associated with the business of the corporation, as that the corporation could not exist without it.

Nor is it a part of the franchise, though it may be useful in carrying out the purposes of the franchise. So are the steamships of the corporation plying our oceans or rivers. So are bridges and ferry-boats. So are our railroad stations and railroad cars. It has been held that the iron rails, the bed of the road of a corporation, may be levied on and sold—indeed the road itself. The question was decided by the Supreme Court of North Carolina, in State *v.* Rives, 5 Iredell, 297. The masterly

*Minor v. City of San Francisco.*

judgment of Judge Ruffin, places the case upon such impregnable grounds, that we may safely rest upon his opinion.

In Hunt *v.* Meason, 4 Watts., 346, it was held that a bridge was real estate and might be sold under execution. See the reasoning of the Court in that case.

So it has been held that a ferry on the Ohio River is real estate, and descendible to the heirs. 2 J. J. Marshall, 224.

And the Supreme Court of Alabama held, in the case of Lewis *v.* The Intendant, etc., of Gainesville, the same principle. See that case for a full description of the nature of such a property; and also the cases cited in that case. 7 Ala. R.

2 Bouvier's L. D., title, Wharf, 649 : " Wharf is a space of ground, artificially prepared for the reception of merchandise, from a ship or vessel, so as to promote the convenient loading and discharge of such vessel."

If this is not real estate, what is ?

The Supreme Court of New York have given (in effect) their sanction to the same doctrine. Boreel *v.* City of New York, 2 Sandford, 552.

The recent case of Shepherd et al. *v.* Covington Drawbridge Co., by Judge McLean, in the U. S. Circuit Court, also establishes the same principle.

This wharf is " real property." We have shown that it is descendible and dowable and vendible, as real estate. It comes, indeed, within the very definition of real estate. It is certainly not less of the realty than a right of fishery, which is real estate. See above cases. Certainly not less than a ferry—nor a bridge. Ib.

The definition is thus given of real estate : " Whenever a perpetual inheritance is granted, as here, which arises out of land, or is in any degree connected with it, or, as is emphatically expressed by Lord Coke, is exercisable within it, it is that sort of property which the law denominates real property." 4 Watts, 346, *supra.*

A wharf is thus defined by the Supreme Court of Massachusetts, in 6 Mass., *supra :* " A structure erected on a shore, below high-water mark, and sometimes extending into the channel, for the laying vessels alongside, to load or unload, and on which stores are often erected, for the reception of cargoes."

The California statute, in relation to executions, is, probably, the broadest and most comprehensive in the Union. By section one hundred and eighty-four of the Practice Act of 1850, it is provided, that " all the real estate, not exempted by law, whereof the defendant, or any person for his use, was seized on the day of the rendition of the judgment, or at any time thereafter, shall be liable to be seized and sold upon execution." § 217. "*All property*, real and personal, of the judgment-debtor, shall be liable to execution." If, then, a wharf is real estate, or if it be

"property," it passed; and it would be a bold thing to say, that a bridge worth $20,000, or a ferry, or a wharf of the same or other value, was not "property," and that in a will or a deed it would not pass under that comprehensive designation. There is nothing in reason to exclude the right of taking toll on a bridge or a wharf, from the common incidents of property, more than the tolls themselves when taken. See the following cases, showing that franchises of this sort are alienable. 7 Smedes & M., 378.

There might be some plausibility in the idea that a wharf could not be sold, if, connected with it, was a franchise granted by the government, and which devolved certain personal duties upon the grantee which were made obligatory upon him; for it might then be said, that the government could not exact the duty, and suffer that which is necessary to its discharge, to be taken away.

But that is not this case; for, on the contrary, it has leased (and doubtless might sell) this very property.

If we regard the franchise of taking toll as an incorporeal heraditament, it is still a tenement. 2 Blackstone, 17; 4 ib., 401. It is capable of assignment and may pass by deed or grant. 4 Johns. R., 81; 3 Kent, 402.

In this case, the right is in the nature of a necessary use of the corpus of the property, and would pass as appurtenant to the wharf or to the land. It is not personal to the holder. So held by the Court of E. & A. of Miss., in Townsend *v.* Blewitt, 5. How., 508, in the case of a bridge-franchise granted by the Legislature. From its nature, the right to use the wharf—for toll or otherwise—was, if not a mere incident to the property, at least an easement appurtenant to the land, and passes by deed with it. Coke Lit., 307-127; 3 Kent, 433-428.

Looking to the objects of the Legislature, and the intents and words of the act, further illustrated by the other legislation in connection with the subject, there can be no doubt that this was not a mere license, but a grant. It does not differ from the authority to build a bridge over a river, It is in consideration of public convenience, and looks to the erection of permanent and valuable improvements. It has been held that this authorization is a grant and not a mere reversible license. 3 Cushing, 58.

When, therefore, the city, mediately or immediately, exercised this right of building a wharf, not only the structure, but the land over which it was built, became at once the property of the city. It might have, possibly, still remained subject, in the hands of the State, to its eminent domain for the protection of navigation; but only subject as property otherwise obtained.

It is not material, perhaps, whether the wharf is the mere structure or the land on which the structure stands and neces-

sary for using it.   We may concede that land will not generally pass as appurtenant to land; but the rule is not universal, and where the intent is plain, land may pass as appurtenant to a wharf, where the land is of no use except as auxiliary, or for the purposes of the wharf.   Thus in Massachusetts, it was held in Doane v. Broadstreet, 6 Mass. R., 332, that flats necessary to a wharf, and usually occupied with it, may pass as appurtenant. But in this case the land known as Pacific Wharf, was levied on and sold; the structure was only on a part of this land, but the whole of this land was the wharf-land, that is, the land set apart and appropriated for this wharf.

But we have shown, that the city was in possession, either by herself or from herself, or those claiming under her and acknowledging her title; and the mere possession is a title which may be sold.   9 Cowen, 233.   Neither the defendant in execution, nor any one holding under him, can set up against the plaintiff in execution, or a purchaser under him, an outstanding title, nor deny that the defendant has title.   2 Porter, 480; 10 Johns., 323; 1 Johns. Cases, 153; 1 Johns. R., 44; 3 Caines R., 188; Ala., 331; 12 Ala., 18; 10 Ala., 254; 11 S. & M., 327; 8 Dana, 194; 7 Cowen, 717; 4 Johns., 211; 3 Wash. C. C. R., 545.

These cases show that the defendant in execution can show nothing against the purchaser; he is as much estopped by the sheriff's deed, as he would be by his own : and, if by an executory contract with the defendant, another acquires possession of land, sold as defendant's, he is as much bound as the defendant himself; more especially if, as in this case, the person in possession holds the same title for the use of the defendant, or as his tenant or trustee.

It follows, from this view, that the city of San Francisco cannot set up title against this execution-purchaser; and that the fund commissioners, holding by the same title, could not set it up either.   See 4 Johns., 211.

The remaining difficulty, if we have been thus far successful, arises from the decision of this Court, in the case of Woods v. The City of San Francisco, 4 Cal., 193.

Upon a strict examination of this case, it will be found that neither the facts nor the principles of that case apply to this.  A principal question there, was, as to the right to divert the street on which the wharf was, to other uses; and the Court decided that it was not competent for the Legislature or the city to do this.

The argument of counsel, and the opinion of the Court, both put the case upon entirely different grounds from those here,— except that the counsel there took the position, rather too broadly, that, when a sheriff sells land under an execution, against the will, or without the privity or consent of the defendant, the latter will not be estopped to show he had no right—and 4 J. J.

Marshall, 585; 1 Dana, 359; 15 Mass., 470, are cited to sustain this doctrine. But we apprehend this doctrine cannot be maintained. The Kentucky cases go on the ground that the Kentucky statute—which exempts equities, etc., is different from the New York statute, under which, that Court admits, decisions have been made to the contrary. Here the statute is quite as broad, indeed broader, than the New York statute.

It was, undoubtedly, the intention of the statute of California to put the deed of the sheriff on the same footing as the deed of the defendant—and this is the sense of the rule : that the sheriff, being the agent of the defendant, conveyed the interest of the defendant, with the same effect as if the defendant made the deed. This is the ground Judge Washington took in Cooper's Lessee v. Galbraith, 3 Wash. C. C. R., 545. " The sheriff stands in the situation of the attorney of the party appointed by law to sell and convey, and his deeds stands on the same footing with the deed of the party himself." I can find no such case as 15 Mass., 470, at all relating to the point. 4 Dana asserts the same doctrine as Marshall.

But we submit that these are overborne, not only by the reason of the rule, but by an immense preponderance of authority the other way. See Tillinghast's Adams, 301; 2 Greenlf. Ev., § 662, and cases in notes.

Finally and especially :

The main and decisive difference between this case and the case of Woods is, that, at the time of the act of the confirmation of lease, viz. : first May, 1851, the site of the Pacific Wharf was outside of the water-front of the city; the act of twenty-sixth March, 1851, did *not*, therefore, convey to the city this wharf. It belonged, as we showed before, to the State, when the State ratified and confirmed the use made of it. The lease of the Sinking Fund Commissioners, was not a nullity, therefore, unless any lease is a nullity, which does not carry to the lessee the property in it; but it lacked only the assent of the owner of the property to make it a good lease, and it got that consent by the act of ratification by the State.

By section four of act of March 26th, 1851, (Acts of 1851, p. 307,) the boundary-line of the city—the water-front—shall be and remain a permanent water-front of said city; the authorities of which shall keep free and clear from all obstructions whatever, the space beyond said line to the distance of five hundred yards therefrom. This shows that no street could be made outside of said line.

This Court never meant to hold that a reversionary interest— that is to say, the fee of property, may not be sold on execution, especially under our statute. That, if a man rents out his land, the land cannot be sold for the debts of the owner; for, if this is

the law, all a man in debt has to do, is to keep his premises rented.   See 8 Dana, 195.

Nor can it be pretended that a wharf is a street.   It may be, but so may a bridge or a sea-wall.   There is nothing in the nature of a wharf which makes it a street, any more than there is in a street which makes it a wharf.

The whole principle of the case of Woods *v.* The City, and every consideration that entered into that case to make up the opinion, opposes—to say the least, they do not favor, the view which we have combated; the facts are not the same; the reasoning is not the same and, we confidently submit, that the law is not the same in that case and in ours.

*Fletcher M. Haight* for Respondents.

This case is within the case of Woods *v.* The City of San Francisco et al., reported in 4 Cal., 190.

Pacific street is extended into the bay beyond the water-front, as alleged, two hundred feet.   This does not become private property by extending the street.   The city limit is far beyond this extension, and was, at the time of sale.   Laws of 1851, p. 387.

The city was authorized to construct wharves east of the water-line ceded by the water-lot bill, and prescribe the wharfage. Laws of 1851, p. 111.

The purchase was of Pacific-street Wharf, which extends into the bay, by permission of the Legislature.

We are unable to see that this case can be distinguished in principle from the case in 4 Cal. R.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The questions raised in this case are, in all essential particulars, the same as those decided in the case of Woods *v.* The City, (4 Cal., 190.)   The learned counsel for plaintiff has sought to show a difference in the two cases; but has failed, in our judgment, to make it out.   The reasons given, and the views expressed in the opinion of the Court in that case are entirely applicable to the facts of this case.

The judgment is therefore affirmed.