WILLIAW A. KNOWLTON, PLAINTIFF IN ERROR, v. JOHN MANDEVILLE, DEFENDANT IN ERROR.

Verdict: INSTRUCTIONS. Where the verdict is the only one that should have been returned by the jury under the evidence, it will not be set aside, notwithstanding the court may have given an instruction upon a matter not in issue in the case.

ERROR to the district court for Dixon county. Tried below before CRAWFORD, J.

W. E. Gantt, for plaintiff in error.

*Barnes Brothers,* for defendant in error.

MAXWELL, CH. J.

This action was brought upon three promissory notes, the amount claimed in the aggregate being the sum of $280.87.

The defendant filed an answer as follows:

He admits the making of the notes described in plaintiff's petition at the time and place alleged in said petition, and that he gave the same for and in consideration of a certain combined mowing and reaping machine, known as the Knowlton Reaper and Mower; that the defendant bought said machine of said plaintiff through the said plaintiff's agent, Frank Peavey, and as payment for said machine this defendant gave said plaintiff his notes as stated in his petition; that at the time of buying said machine the said plaintiff warranted and fraudulently represented said machine to do good work, and to be one of the best machines in the market.

Defendant further says that he took said machine home with him and set the same up, and tried to use it as a reaper; that the said machine did not work, and said defendant was unable to make said machine work; and that said defendant immediately notified said plaintiff that said machine would not work, and that plaintiff sent his agent to put said machine in order; that said agent came to the farm of defendant and tried to work said machine, but was unable to do so; and then and there said defendant turned said machine over to said plaintiff, and demanded said notes sued on in plaintiff's petition, and said plaintiff refused to deliver the said notes, and never did deliver the said notes to this defendant. Defendant says that machine was taken by said plaintiffs at that time, and sold by them, and that defendant never received any value for said notes whatever, and has been unable to get said notes from said plaintiff.

The reply is a general denial.

The defendant was a witness in his own behalf, and testified as follows :

I reside in Dixon county. I purchased a reaper, and passed the notes in suit in payment of it. I purchased it of Mr. Peavey ; I supposed he was acting as agent. He represented the reaper to be a good one. He said if it was not as good as a McCormick I would not have to keep it. I took it home and set it up on Tuesday. On Wednesday, in the afternoon, I tested it in my own field. I then took it into Mr. O'Neill's field, and we couldn't do anything with it. Then we took it in Mr. Kerwin's field and tried it, and we could not do any better with it. There were three different fields I tested it in in three days.

I then went to Sioux City and told Mr. Peavey I could not do anything with the machine. He asked me what was wrong and I told him as near as I could. He said: "My man that sets up machines is up in Dakota, and will be home to-night, and as this is Saturday evening, if you will wait until Monday morning he will go out with you and see what is the matter." I waited until Monday, I think, and we went out there. He sent Steve Gretzer, his man, out with me. We got there about noon, I think. After we got our dinner we hitched our team up to the machine and looked at it to see that it was set up right, and we drove around a while but we couldn't do anything with it. He said my team was too light and we got Mr. Kane to drive it with his team; but at the time he got around he told Mr. Kane to drive it out on the prairie and leave it, as it was good for nothing. Mr. Kerwin was present.

In a few days—7 or 8 days—I went to Mr. Peavey's office and asked him for those notes. He said: "I have sent them to Mr. Knowlton." I said: "I want the notes." He said: "I will write for them and have them back for you in a few days." Mr. Knowlton was the manufacturer of the machine.

I don't know what became of the machine afterward. I think it stands on the prairie yet. I never heard Mr. Peavey or his traveling agent say anything in regard to their selling machines to other parties. Mr. Gretzer could not make the machine work. He told Kane to drive it out on the prairie. He couldn't use it. It was worthless. In fact it was good for nothing. I did not have any conversation with Mr. Peavey about the machine being sold afterward, except what he said that same fall the second time I went to demand the notes. He said he hadn't them back again; he said that he guessed he would have to write for them again. I went to work, and a few weeks after that I went again, and he said, You can never recover those notes; he said, You will come by them some day or other. He did not admit that he had sold the machine to some one else.

### CROSS-EXAMINATION.

I bought this machine at Sioux City of Mr. Peavey. I never worked for him. I have lived at Sioux City; I did not at the time I bought the machine.

I never worked at setting up machines. I got the machine at Mr. Peavey's warehouse. I brought it out home myself. I was not acquainted with the Knowlton machine then. I am now. I never saw them worked before. I bought this one because Mr. Peavey said it would do as good work as as a McCormick, and if it didn't I wouldn't have to keep it. I have seen a McCormick machine work. There were no Knowlton machines in my neighborhood. I have never known a Knowlton machine to fail before except by hearsay. I set up the machine and tried it at once. I had set up other machines in Iowa for myself and others. I never was employed in selling machines nor in working for men who sold them. When I took this machine Mr. Peavey represented it to be a machine that would do good work. He did not give me

a written warranty; he merely told me he thought it was a machine that would do good work. Most anybody gets that representation that buys a machine. I was acquainted with Peavey. I tried it in wheat. It was a fair average field. I went around the field. I tried it three or four times. I tried it in other fields that were fair average grain—some heavier and some lighter. I did not try it with any other machine. While I was at work in Mr. Kane's field, Mr. Kerwin drove in with a McCormick. The one machine followed the other around the field. The McCormick was the best machine. I did not see that the McCormick went better in one kind of grain than in another. After I found the machine wouldn't work, I went to Sioux City. I went to Peavey's office and told him the machine wouldn't work. He said: "Mr. Gretzer will be home to-night and will go out with you Monday." We went out Monday. I could not see that he made any material changes in the machine. He might have changed the reel or some of the bolts. I did not try the machine after that. Gretzer tried it awhile and he hauled it out on the prairie. He didn't tell me what was the matter with the machine. I didn't do anything with the machine after it was driven on the prairie. I do not know what became of it.

I never returned it to Mr. Knowlton. I was in after a few weeks, when I asked Mr. Peavey for those notes, and I told him where it laid, that it was just where Mr. Gretzer left it. He said: "What will you take to bring it in?" I told him I would bring it in for $2.50. He said he could get a team and go out and bring it in for $2.00, and he wouldn't pay that much.

Q. Did you then turn it over to Mr. Peavey?

A. I presume I did. It had been turned over before. I was done with it after Gretzer had told them to draw it out on the prairie.

I didn't tell Peavey so personally. I do not know

whether Gretzer is a machinist or not.    He could set up a machine or a reaper as far as that went.

### RE-DIRECT.

I relied on the representations made by Peavey in regard to the machine being a good one.    If I had not I wouldn't have passed my notes.    Gretzer tried the machine after he came out.    We had Mr. Kerwin's team.    Mr. Kerwin happened to drive in before we got through and drove right along on the same swath and took up a good deal of grain that we left.    The agent had got Mr. Kane to drive the machine with a heavier team than I had.    He said my team was too light.    He told Mr. Kane to drive the machine out on the prairie and leave it, and I said nothing.    The agent was the one that tested it then.    I claimed that I had tested it in three or four fields before he got there.

Patrick Kerwin, being sworn, testified as follows:

I have resided in Spring Bank precinct since '71 or '72. I am acquainted with the parties to the suit and have seen the reaper.    I think I was in Mr. Kane's field once when it was tried.    I guess they were at work there before noon trying to make it work; but they could not get the machine to work.    I understood it was to do as good work as the McCormick.    I think Mr. Gretzer came for me and wanted me to bring over the McCormick and see if it would cut the grain.    I think he had Mr. Kane drive Mandeville's team.    I followed him and cut right along on the same ground and cut the swath at one side that he run over entirely.    At the other side of the field it cut as clean as any.    When the wind blew against it it would do good work, but if the wind wasn't blowing against it it would not work at all.

After a while Gretzer asked me if I would let him have my team.    He said he thought Mandeville's team was too light.    We hitched on my team and I walked along with

Gretzer, and Kane drove after. We went along with it a round. He came back and told him to unhitch, that he was through. He didn't tell me to take it out on the prairie, they drove it out. The McCormick did the best work, the other machine didn't do any work in fact.

## CROSS-EXAMINATION.

The Knowlton machine cut one way, but not the other. The reason was the wind blew pretty strong from the north and blew the grain right on the platform. When it was going against the wind it would cut clear. When going the other way it would gather under the reel, and would not cut. It seemed that day that it took the wind to get it to cut clean. The McCormick would cut against the wind as with it. I saw the two machines work together. I am not acquainted with the Knowlton machine except that one, I never seen one used before. I think I saw one at a distance. The McCormick, Buckeye, and Woods's are generally used in my section. Gretzer was there all the time. I don't know what he did say. He said the machine wouldn't suit him. I don't know what he did do with the machine. He left the machine on the prairie. This I seen. I didn't see the machine until I was sent for. I have heard they were cutting in other fields. Previous to this time I seen it cutting in light and heavy grain. It didn't act better than the McCormick in heavy grain. If the wind blew it in the platform it did good work. I don't think it was tried on a calm day. That was all the trial I ever seen.

I understood Gretzer was working for Peavey setting up machines. I have known him for years previous. His occupation was setting up machines, and although Gretzer did not say anything about taking the machine away that I heard, he had said, " Take it out of the field, that he wouldn't ask any man to use it." He made no reply to Mandeville when he told him to take it.

### RE-DIRECT.

I am pretty sure I seen a Knowlton machine work on the Dakota bottom at a distance. I don't know how it worked. I heard everything that passed between Mandeville and Gretzer in my. pasture. I didn't drive the machine; they had my team. Mandeville told Gretzer to take the machine away. Gretzer made no reply. He told me that the machine wouldn't suit him. I do not know what he done with the machine. It was drove out on the head land and left there.

Steven Kane, being sworn, testified as follows:

I am a resident of Dixon county, Nebraska. Was present at a trial of a Knowlton reaper sold to Mandeville. Mr. Mandeville got the machine I think a few days before and tried it for two or three hours, and I think the machine passed through the grain and wouldn't cut it, and I think he went to Sioux City to get some one to come out and fix the machine so it would run. I think Gretzer and Mandeville came out on Monday, and Gretzer and I went to the machine and looked it over, and he said he didn't think there was anything wrong with it. He tinkered around awhile. I don't know what he done with it. After we had done we hitched Mandeville's team on it. The team was a very light one and the machine wouldn't work. Gretzer said he thought the team was too light to keep up the speed. We sent for Mr. Kerwin and his team and the McCormick mower. That was the understanding—the machine was to do as good work as the McCormick. Mr. Kerwin came there with the machine and followed around and took up lots of grain that the Knowlton machine left. Gretzer I think appointed me to drive the team of Kerwin to the Knowlton machine at the same speed the McCormick was drove, and I done that as near as I could. The Knowlton machine did not do good work. It run over the grain considerably. When the

wind blew the grain on the sickle bar it would cut it, but when the wind blew it away it would run over it. After we tried to test the machine it was drove out on the prairie and left. I cannot say whether it was Mandeville or Gretzer that ordered me to take the machine out there. I think Mandeville ordered me to drive the machine out on the prairie. I did not hear Gretzer express any opinion about the machine.

### CROSS-EXAMINATION.

I have known Mandeville about ten years. I knew him at Sioux City. He was working at days work there. I didn't see the machine when he brought it home. I don't know how hard the wind was blowing. It was a pretty fair gale, not a very strong wind—it was quite a breeze. You know it always blows a pretty good breeze on the prairie. It was blowing quite a little gale. We did not try the McCormick at the same time. I don't know if the wind was blowing as hard as when we tried the Knowlton machine. I think it was. The McCormick cut clean. We tried them as near together as we could. I unhitched from one and hitched to the other.

The defendant rested.

The plaintiff, to sustain the issues on his part, offered and read in evidence the deposition of Steven Gretzer as follows:

I am 38 years of age. Reside in Council Bluffs, Iowa. Am a traveling salesman. Am acquainted with the parties to this suit. I met Mr. Knowlton once in Sioux City and met Mandeville at his place in Dakota county, Neb. I was sent there by Mr. Peavey, who was agent for Knowlton's New Manny reaping and mowing machines and harvesters. I have had some four years' experience in selling, handling, testing, and using reaping machines from the years 1876 to 1880, and my experience has been with several reaping machines in handling and testing said ma-

chines, and have a knowledge from using, testing and handling reaping machines. At the time of my visit to defendant I was traveling salesman or canvasser for reapers and other agricultural implements for Peavey Bros., who sold the machine to the defendant. I was sent there by Peavey Bros. to see the machine work. I examined the machine as to material, workmanship, condition, and quality and found it all right. I tested the machine in grain with a McCormick machine. Part of the grain was thick and heavy and part of it was very light. The Knowlton machine did not cut so well in the very light grain, but cut much better in the heavier grain, and on the whole did better work than the McCormick. There was no defect in the machine. Peavey Bros. have sold hundreds of these machines, and all have given satisfaction, and this one sold to defendant was as good in workmanship and material as the others. I know of no good reason why the machine would not do good work. It did good work when I tested it. I know the warranty given on the sale of these machines, and this one fully complied with it. When I left the defendant's place he stated he would not keep the machine and pay for it even if it did work.

Plaintiff rested.

### DEFENDANT'S REBUTTING TESTIMONY.

Patrick Kerwin:

I heard the deposition of Gretzer, and observed that portion relating to the working of the machine. I had a conversation with Gretzer in regard to the working of the machine. He told me, as near as I can remember, that it was the only one he had ever had anything to do with that he could not get to work pretty well. He also told me that this machine would not work—that it would not suit him.

Steven Kane:

I heard the deposition read. I heard the portion of it

relating to the working of the machine. I did not hear the conversation between him and Mr. Kerwin. I heard Mr. Kerwin ask him what he thought of the machine and he said the machine wouldn't suit him. That was all I heard.

The foregoing is all of the evidence offered or introduced by either party on the trial of the cause.

The court on its own motion gave to the jury the following instructions:

1. The defendant having admitted the execution and delivery of the notes sued on, it devolves upon him to prove his defense by a fair preponderance of all the testimony.

2. When a party sells to another a machine to do certain work, there is an implied warranty that it will do the work for which it is intended, in a good and workmanlike manner, even in the absence of an express warranty.

3. If you find that the reaper did not do good work, or failed to work as warranted, and that the reaper was taken back by the plaintiff, then the defendant was entitled to a return of his notes, and you will find for the defendant.

4. If you find from the testimony that the plaintiff warranted the reaper to do as good work as the McCormic reaper, and that it did not do as good work, and that the defendant returned the machine to the plaintiff after giving it a fair trial, then you will find for the defendant.

5. If you find from the testimony that the defendant gave the plaintiff an opportunity to put the machine in order and test it, and that after such test or trial the plaintiff, through his agent, failed to make the machine do good work, and that plaintiff ordered the defendant to deliver the machine at a certain place, and that the defendant did so deliver the machine at said place, then the plaintiff cannot recover in this action, and you will find for the defendant.

6.   But if the jury find from the testimony that the machine was not warranted, or that it did do good work, or that the machine was not returned, as explained in these instructions, then you will find for the plaintiff.

·7.   If you find for the plaintiff you will find the amount due upon the notes with interest, and assess their damages in the amount claimed in the petition.

8.   If you find for the defendant you will so say by your verdict.

To the giving of numbers 2, 3, 4, 5, and 6, plaintiff excepts.

The following instructions were given at the request of the plaintiff.

2.   The jury are instructed that the fact of Gretzer being employed by F. Peavey to repair and set up the machine did not make him an agent of plaintiff to receive the machine.

Modified by the court with the addition: That if the acts of said Gretzer were affirmed and accepted by plaintiffs or their agents, or if Peavey's agency necessitated the employment of others, and he did so employ, then the plaintiff is bound by the acts of such agents within the scope of the agency.

3.   The jury are instructed that the only evidence in regard to a return of the machine is, that one Gretzer, who was in the employ of Frank Peavey, went to defendant's place of residence and examined said machine, and the evidence shows that an attempt was made to turn the machine over to this party. In order to avail the party as a defense, the evidence must not only show that the machine was turned over to this man, but it must further show that he was authorized to receive the same for plaintiff, and if the proof fails to show that he was authorized to receive the same by plaintiff, then this will not be any defense, and plaintiff will be entitled to recover.

Modified by the court as follows: That if Peavey afterwards recognized such return, then plaintiff is bound by it.

4. The jury are instructed that a delivery of the machine to a workman employed by plaintiff's agent, is not a return of the same to the plaintiff.

Modified by the court as follows: Unless the plaintiff's agent who sold the machine accepted such return or recognized such return.

That portion of the above instructions that are numbered 2, 3, and 4, asked for by plaintiff, which are printed in italics, was added by the court as a modification of the same, and to the modification thereof the plaintiff duly excepted.

The following instruction was asked by the plaintiff and refused by the court, to the refusal to give which plaintiff duly excepted:

The jury are instructed that if the defendant purchased the machine without an express warranty from the plaintiff, he bought the same at his own risk, and plaintiff is not liable for defects in the machine.

The jury rendered the following verdict:

We, the jury, duly impaneled and sworn in the above cause, do find for the defendant, John Mandeville.

L. G. WRIGHT,<br>
*Foreman.*

It will be observed that the testimony tends to show that Peavey was the agent of the plaintiff; that he warranted the machine in question to do as good work as the McCormick, and that if it failed to do so the defendant was not to keep it; that the machine in fact did not do as good work is clearly established. It will be observed that Mr. Gretzer, while testifying generally to the good quality of the machine, fails to deny certain things attributed to him by the witnesses, which are material in the case. Neither does Mr. Peavey deny that he offered the defendant two dollars

to return the machine, nor any of the conversation which the defendant testifies he had with him. Many of the material facts sworn to by the defendant and his witnesses therefore stand admitted. There is, therefore, not only sufficient testimony to sustain the verdict, but the jury would not have been justified in returning a different one. The second instruction given by the court on its own motion was not required by the issues in the case and should not have been given, but as it is apparent that the verdict is the only one that should have been rendered under the evidence, it will not be set aside.

The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.