GOTTLIEB STORZ ET AL. V. LENA FINKLESTEIN, ADMINIS-
TRATRIX, ET AL.

FILED JANUARY 7, 1897.   No. 6308.

1. Attachment: ACTION ON BOND: BURDEN OF PROOF.  In an action on
   an attachment bond, where the answer is a general denial of the
   averments of the petition, the burden is upon the plaintiff to show
   that the attachment was wrongfully issued; that is, that the aver-
   ments in attachment affidavit as ground for the writ were untrue.
   RYAN and RAGAN, CC., dissenting.

2. ——: ——: INSTRUCTIONS.  An instruction in such a case which
   permits the jury to return a verdict for the plaintiff if they find
   that the attachment was merely dissolved, *held* erroneous.  RYAN
   and RAGAN, CC., dissenting.

3. Review: INSTRUCTIONS.  A judgment will not be reversed for errors
   committed in giving instructions where it is not shown the unsuc-
   cessful party could have been prejudiced thereby.

4. Attachment: BOND: SIGNATURES.  An attachment bond is valid
   without the signature of the attaching plaintiff, and where he does
   not sign the bond he is not liable thereon to defendant in attach-
   ment.  RYAN and RAGAN, CC.. dissenting.

REHEARING of case reported in 48 Neb., 27.   *Reversed
in part.*

*Lake, Hamilton & Maxwell,* for plaintiffs in error.

*Estabrook & Davis* and *Charles E. Clapp, contra.*

NORVAL, J.

Louis M. Finklestein recovered judgment in the court
below against Gottlieb Storz, Joseph D. Iler, and Theo-
dore Olsen upon an attachment bond.  The defendants
jointly and severally prosecuted error to this court, and
a judgment of reversal was entered at the last term, the
opinion being reported in 48 Nebraska, 27.  A motion
for a rehearing, based upon three grounds, was sustained,
and the cause again submitted for consideration.

It is urged that the judgment of the lower court should,
in any event, be affirmed as to the defendant Olsen.  The

16

judgment as to him was reversed for the giving of this instruction:

"1. In order that plaintiff may recover in this action, he must satisfy you by a preponderance of all the evidence: First, that defendants Storz and Iler, in a suit brought by them against him, caused an attachment to be issued and levied on his bottling works; second, that said attachment was dissolved in due course of law; third, as to the amount of damages, if any, suffered by him as a direct result of the issuance and levy of said attachment; fourth, that the attachment bond was duly executed by defendant Olsen."

An examination of the briefs and arguments has failed to convince the writer that this instruction stated the correct rule applicable to the issues made by the pleadings either as to Olsen or his co-defendants. It will be observed that the suit is upon an attachment undertaking conditioned in accordance with the provisions of section 200 of the Code of Civil Procedure, "that the plaintiff shall pay the defendant all damages which he may sustain by reason of the attachment if the order be wrongfully obtained." There is no possible room for doubt that no liability arises upon such a bond unless the attachment was wrongfully issued, and the burden of establishing that fact is upon the plaintiff. No decision rendered under a statute like our own holds the contrary to be true. The element of the wrongful issuance of the attachment was omitted from the instruction quoted except it is contained in the second subdivision thereof, namely: "That said attachment was dissolved in due course of law." In the former opinion it was held that this language was not sufficient to show that the attachment was wrongfully sued out, and that view is evidently sound, inasmuch as the attachment may have been dissolved for mere defects, omissions, or irregularities committed by the officer in issuing the writ. Doubtless, the discharge of an attachment on a finding in favor of the defendant, on an issue as to the truth of the facts alleged

as the ground for the writ, is conclusive between the parties in an action on the bond that the writ was wrongfully obtained, unless it has been reversed on error. (*Hoge v. Norton*, 22 Kan., 374; *Mitchell v. Mattingly*, 1 Met. [Ky.], 237; *Boatwright v. Stewart*, 37 Ark., 614.) But the instruction under consideration failed to inform the jury that they must find the attachment was discharged for want of sufficient grounds for the obtaining of the writ to justify a recovery on the bond. The effect of the instruction was to withdraw from the consideration of the jury whether the attachment had been wrongfully obtained, and to allow a recovery if they found the writ had been discharged for any cause. The authorities generally hold that an attachment is not wrongfully obtained unless it is shown that the plaintiff has no meritorious cause of action against the defendant, or having such a cause of action, the ground stated in the attachment affidavit is untrue. The word "wrongful," as used in the statute, does not apply to a dissolution of an attachment on account of defects in the form of the proceedings or for mere omissions, irregularities, or informalities which the officer may have committed in the issuance of the process.

The statute of Florida requires the plaintiff in attachment to give a bond with at least two or more sureties in double the amount claimed conditioned "to pay all costs and damages which the defendant may sustain in consequence of improperly suing out said attachment." (Statutes of Florida, 1892, sec. 1046.) The court, in construing the above provision in *Steen v. Ross*, 22 Fla., 480, say: "We think the word 'improperly,' as used in the statute, has a broader signification than a mere irregularity, and that it is insufficient to allege as a breach of the condition, although in the express words of the bond, that it was improperly issued. The breach should state with distinction in what its impropriety consisted. . It is only improperly issued when the plaintiff has no meritorious cause of action, of that class of actions in which the law

authorizes a resort to the remedy against the defendant,
or having such a cause of action the ground alleged in
the affidavit for its issue is untrue, or not one of the
grounds enumerated which must exist before it can be
obtained.    We do not think it was intended to cover a
case where the plaintiff had a meritorious cause of action
of the class for which an attachment may legally issue,
and when the cause for its issuance is one of those speci-
fied in the statute, and such cause is true if the attach-
ment was dissolved for some irregularity or for some
technical reason."    The doctrine announced in the fore-
going is stated with approval in Drake on Attachment,
sec. 170, and Shinn on Attachment & Garnishment, secs.
183, 187.

Sharpe v. Hunter, 16 Ala., 765, was a suit upon an at-
tachment bond conditioned substantially like the one at
bar.    The order for attachment was quashed for a defect
in the affidavit upon which it issued.    The trial court
charged the jury that if they believed the writ of attach-
ment sued out was abated on plea,· the plaintiff was
entitled to recover his actual damages sustained.    The
supreme court held this instruction erroneous.    Chilton,
J., in the course of his opinion, observed: "What is
meant by the term 'wrongful' as used in the statute to
which this bond conforms?    Was it, as is contended by
counsel for the defendant in error, designed to apply to
defects in the form of the proceedings, on account of
which the attachment should be quashed, as well as to
the ground upon which it was to be issued?    Or was the
object of the framers of the act merely to provide a
remedy against persons who should resort to this extra-
ordinary remedy to the prejudice of another, without
cause or sufficient ground therefor?    It is, to my mind,
perfectly clear that the latter construction is the correct
one.    *   *   *   We think that by the wrongful suing
out of the attachment is meant, not the omissions, irregu-
larities, or informalities which the officer issuing the
process may have committed in its issuance, but that

the party resorted to it without sufficient ground. The case of *Kirksey v. Jones*, 7 Ala., 622, not only fully sustains this view, but goes quite beyond it. So far as it conforms to this construction of the statute, we fully approve of that decision."

*City Nat. Bank v. Jeffries*, 73 Ala., 183, was founded on an attachment bond. The court on defining the term "wrongful" say: "The meaning of this is, not that the attachment proceedings are faulty and liable to be abated or quashed. Such defects furnish no grounds for recovery of damages. To be 'wrongful' within the statute, none of the statutory grounds for attachment must exist. (*Sharpe v. Hunter*, 16 Ala., 765; Drake, Attachment, sec. 170; *Durr v. Jackson*, 39 Ala., 203.) To justify an attachment there must be a debt, due or to become due, and one of the enumerated statutory grounds for attachment must exist. (*Lockhart v. Woods*, 38 Ala., 631; *Durr v. Jackson, supra*.) If either of these be wanting in fact, no matter how sincerely the attaching creditor may believe it to exist, then the attachment is wrongful. In such case the measure of recovery in a suit on the bond is the actual injury sustained. * * * And in such action the *onus* rests with the plaintiff to prove the falsity of the affidavit, or, what is the same thing, the nonexistence of the ground on which the attachment was sued out."

In *Calhoun v. Hannan*, 87 Ala., 277, it was ruled that an action could not be maintained on an attachment bond unless the attachment was wrongfully sued out; that is, unless it was issued without the existence of any one of the facts which authorize a resort to the process.

In *Garretson v. Zacharie*, 8 Martin, n. s. [La.], 481, it was decided that the surety on an attachment bond is not liable when the attaching creditor failed in his cause of action by reason of some irregularity in the proceedings, posterior to the bond.

In *Pettit v. Mercer*, 8 B. Mon. [Ky.], 51, it was decided that the mere failure of the plaintiff in attachment to

prosecute his suit to judgment does not constitute a breach of the condition of the bond. To the same effect are *Cooper v. Hill*, 3 Bush [Ky.], 219, and *Nockles v. Eggspieler*, 47 Ia., 400.

In the first opinion filed herein, *Eaton v. Bartscherer*, 5 Neb., 469,—two cases,—was cited to sustain the doctrine that a suit on an attachment bond cannot be maintained merely on account of the attachment having been dissolved for omissions or irregularities in issuing the writ. A reference to the opinion will disclose that it is decisive of the question under consideration. Both of those cases were suits upon attachment undertakings conditioned, like the one before us, according to the requirements of the statute. The petitions averred that the attachments were dissolved on proceedings in error, but contained no allegation showing that the orders of attachments were wrongfully issued. This court, by LAKE, C. J., held that each petition failed to state a cause of action. In the opinion it is said: "The undertakings upon which these actions were brought contain simply the statutory requirements, by which the obligors therein promise to pay the defendant all damages which he might sustain by reason of the attachments, if the orders therefor were 'wrongfully obtained.' There is no agreement to pay all damages that might be occasioned by the attachments, in any event, but only in case it should be established that the orders of attachment were 'wrongfully' sued out. In these petitions there is no charge that these orders of attachment were wrongfully or unjustly obtained, nor is there any statement from which that fact can possibly be inferred. There is, to be sure, in each of them an allegation that after the attached property had been sold, and the proceeds applied upon the judgment in pursuance of the order of the court, proceedings in error were prosecuted which resulted in the dissolution of the attachments. But there is nothing to show upon what this decision was based; and for aught that appears, it may have been for a mere tech-

nicality, or for some other cause entirely consistent with the fact that the plaintiffs were fully justified in resorting to the process of attachment for the collection of their claims." The chief justice, after quoting from the opinion in *Sharpe v. Hunter*, 16 Ala., 765, that "by the wrongful suing out of the attachment is meant, not the omissions, irregularities, or informalities which the officer issuing the process may have committed in its issuance, but that the party resorted to it without sufficient grounds," says: "The following are authorities on the same point under statutes quite similar to our own: *Pettit v. Mercer*, 8 B. Mon. [Ky.], 51; *Raver v. Webster*, 3 Ia., 502. We are of the opinion, therefore, that in failing to allege, or show by reasonable inference, that the orders of attachment were 'wrongfully' sued out, or, in other words, that no just grounds actually existed for a resort to this extraordinary process, these petitions are fatally defective and wholly inadequate to support these judgments." The principle underlying those cases is clearly applicable to the question now under consideration. It was distinctly ruled that a petition on an attachment undertaking is fatally defective which fails to show the order of attachment was wrongfully procured, and further, that no reasonable or just inference that the writ was so obtained can be drawn from the mere averment of the dissolution of the attachment. It cannot be successfully claimed that the petitions in those cases failed to aver the attachments had been dissolved, or that the effect of the pleadings was "that the court had made an order sustaining the attachments and ordering the attached property sold, and that the defendants in those actions had by proceedings in error suspended the judgments, and therefore they concluded that suspending the judgments rendered in those actions had discharged the attachments." The petition in each of these cases on file in this court, after setting forth the recovery of judgment by attachment plaintiffs in a justice court for a specified sum and an order for the sale

of the attached property, alleges that a petition in error was prosecuted to the district court, and that "it was considered and adjudged by said court that said order of attachment be dismissed and discharged, and the property thereby attached be released therefrom." From this it affirmatively appeared that the order of attachment had been dissolved and vacated. If a petition is not good which merely avers the dissolution of an attachment, because such an allegation does not show the attachment was wrongfully sued out, it requires no argument to show that the instruction quoted was erroneous, since it permitted a recovery on the bond whether the attachment was wrongfully sued out or not. While the attachment in this case was dissolved, there is nothing in the record to show us upon what ground the order of dissolution was entered. It may have been based upon mere irregularities, omissions, or technical objections, and if so, under the authorities cited the order of dissolution would not be *prima facie* evidence that the writ was wrongfully issued.

In the last brief filed by plaintiffs below they say they do not question the soundness, as an abstract proposition, of the criticism made in the former opinion upon this instruction, but it is insisted that the instruction was not prejudicial to the defendants. As to Storz & Iler this contention is not well founded, for the reason the charge of the court permitted the jury to find against them even though they did not execute the bond. The instruction on the question of signing the undertaking only required them to find that it was executed by Olsen. The instrument declared on disclosed on its face that Storz & Iler never signed; hence they were not liable thereon to the attaching creditor, as we shall presently show. The writer is, however, convinced upon further reflection that the record fails to establish that Olsen was in any manner prejudiced by this instruction. In the previous opinion it was mentioned that the bill of exceptions on its face revealed the fact that it did not contain all the

evidence adduced on the trial. It must, therefore, be presumed that the evidence before the jury was sufficient to establish that the attachment was wrongfully issued, and that it was dissolved for that reason. If such was the testimony, and it must be presumed in the absence of a showing to the contrary, then Olsen was not prejudiced by the charge of the court, unless that portion of the testimony incorporated in the bill of exceptions reveals that the question of the wrongful issuance of the attachment was a controverted or disputed fact. The testimony brought up does not disclose, nor tend to prove, that there was any ground for the attachment, nor is there anything in the record tending to controvert the fact that the attachment was sued out wrongfully, and without just cause for resorting to this extraordinary process. It is true the bill of exceptions contains testimony to the effect that Finklestein, at the time of the attachment, was indebted to Storz & Iler; that he was occupying their building and had removed a portion of his goods to Council Bluffs, and was about to remove the remainder to the same place, for the purpose of engaging in business there. But their testimony falls far short of establishing any one of the grounds for an attachment enumerated in the Code, since the element of fraudulent intent is lacking. In the absence of testimony tending to prove the attachment was not wrongfully obtained, it cannot be said there was any reversible error in not submitting that question to the jury. Error cannot be presumed, but must affirmatively appear to justify the reversal of a judgment. In the absence of a portion of the testimony this court cannot say that any prejudice was wrought by this instruction. It is the settled doctrine of this court that an erroneous charge will not work a reversal when it is not shown the party complaining could have been possibly prejudiced by its giving. (*Ryan v. State Bank*, 10 Neb., 524; *Converse v. Myer*, 14 Neb., 190; *Knowlton v. Mandeville*, 20 Neb., 59; *Western Union Telegraph Co. v. Lowery*, 32 Neb., 732; *State v. Hill*, 47 Neb., 456; *Burlington & M. R. R. Co. v. Gorsuch*, 47 Neb., 767.)

Another argument in the brief is that "section 200 of the Code, having been construed in *Eckman v. Hammond,* 27 Neb., 611, as dispensing with the necessity of the plaintiff in attachment signing the bond, it conclusively follows that his signature to the bond is presumed, and his primary obligation to pay damages for his wrongful attachment is created by statute." It is true this court, in *Eckman v. Hammond, supra,* decided that section 926 of the Code of Civil Procedure, which is substantially the same as section 200, does not require that an undertaking in attachment be signed by the plaintiff, but that if it be signed by a surety alone, the bond is sufficient. It does not, however, follow from this holding that the signature of the plaintiff is presumed, and that he is liable to the defendant in an action on the bond. If the plaintiff is not required to sign an attachment undertaking, how can it be presumed that he did so sign in the face of a record which shows he did not do so. It might be otherwise in case of a bond, which the statute requires to be signed by the principal named therein, which he has procured to be given and approved, but failed to subscribe his name thereto. (*State v. Hill,* 47 Neb., 456.) The bond in suit shows that Storz & Iler are not parties to it. It does not purport to bind them, but Olsen alone, to pay all damages sustained by Finklestein by reason of the wrongful suing out of the attachment, in case the attaching creditor fails to do so. This bond is an independent contract on the part of Olsen, and under our statute the signatures of Storz & Iler were not necessary. (*Eckman v. Hammond,* 27 Neb., 611; *Curtis v. Richards,* 9 Cal., 39; *City of Sacramento v. Dunlap,* 14 Cal., 424; *Murdock v. Brooks,* 38 Cal., 604; *Frankel v. Stern,* 44 Cal., 168.) The liability of Olsen, as between himself and the attaching creditor, is that of principal debtor. This principle was held and applied to the signers of an appeal undertaking in *Flannagan v. Cleveland,* 44 Neb., 59. In Indiana, as in this state (*Clark v. Strong,* 14 Neb., 229), the statute does not require an appellant to sign an appeal bond. The su-

preme court of Indiana held that an action will not lie against an appellant on an appeal bond which he did not sign. (*Supreme Council of Catholic Benevolent Legion v. Boyle*, 42 N. E. Rep. [Ind.], 828, 44 N. E. Rep., 56.)   Applying the same doctrine to the bond in question, Storz & Iler are not liable thereon.   It was never executed, nor intended to be executed by them.   It was not their obligation, but the undertaking of Olsen alone.

*Wolf v. Hahn*, 28 Kan., 588, is not in point.   That was not an action upon an attachment, nor any other kind of a bond.   In that case Rhoda Parkin sued out an attachment against Jacob Poorman which was levied on certain personal property in the possession of Fred Hahn.   Subsequently the latter procured one Wells to execute a re-delivery bond for the forthcoming of the property, or its appraisal, to answer the judgment.   Thereupon the officer returned the attached property to Hahn, who retained possession until after judgment had been rendered in the attachment case, when he delivered the property to the officer, by whom it was sold.   Afterwards Hahn commenced an action against the officer to recover the value of said property.   In Kansas the statute requires a forthcoming bond to be executed by the person in whose possession the property is found, with one or more sureties.   The court held that Hahn having procured the bond to be executed, he thereby estopped himself to deny that the attached property belonged to Poorman, the attaching debtor.   That was the only question before the court in that case.   Whether Hahn was liable on the bond was neither involved nor adjudicated.

Another case relied on is *Pierse v. Miles*, 5 Mont., 549, which was an appeal from an order dissolving an attachment, on the ground, among others, that the undertaking was not signed by the plaintiff in attachment.   The court held the statute did not require him to sign it.   The same question, and none other, was involved in *McIntosh v. Hurst*, 6 Mont., 287, where it was held it was no defense to an action against a surety on an undertaking to pre-

vent an attachment that the defendant in the action in which the undertaking was given did not sign the bond. It is obvious that neither of those cases is in point upon the question before us.

*Hoskins v. White,* 13 Mont., 70, 32 Pac. Rep., 163, was an action upon an attachment bond, signed only by the sureties. The court decided the plaintiffs in attachment were properly joined as parties defendant. The opinion cites *Jennings v. Joiner,* 1 Cold. [Tenn.], 645, which was an action upon an attachment bond executed by the plaintiff in attachment and another as his surety. It was properly held that the principal and surety could be joined in an action on the bond, since it was the obligation of both, both having executed the instrument. But it is not an authority for holding that an attaching creditor is bound upon an attachment undertaking which he never signed, and was not required to execute in order to obtain the writ.

Shinn, Attachment & Garnishment, sec. 169, states that "the sureties, by executing the bond, and the plaintiff, by invoking the writ only, all become liable to actual damages occasioned by the wrongful issuing of the writ." The only decision cited by the author to sustain the doctrine is *State v. Fortinberry,* 54 Miss., 316. There the attachment bond was executed by the plaintiff in attachment and sureties, so that the proposition above quoted, which was taken from the opinion in that case, was mere *obiter.*

Attention is called to sections 41 and 50a of the Code of Civil Procedure, which read as follows:

"Sec. 41. Any person can be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein."

"Sec. 50a. Any person who has or claims an interest in the matter in litigation, in the success in either of the parties to an action, or against both, in an action pending

or to be brought in any of the courts of the state of Nebraska, may become a party," etc.

These sections merely provide who may be made parties to a suit. Obviously they do not create any contract or statutory liability. They certainly confer no authority for holding that one who does not sign an attachment bond is liable thereon. Conceding that Storz & Iler, by reason of their implied promise to make good to Olsen any damages he might be compelled to pay by reason of the wrongful suing out of the attachment, have such an interest in this litigation adverse to the attaching debtor as to make them proper parties in this litigation, it is no reason for holding them liable on this bond to the plaintiff. They had the right to set off against their claim of the attaching debtor the amount of the judgment they recovered against him in the attachment suit, not because they are primarily liable to Finklestein for the damages committed by the wrongful attachment, but for the reason they are required to reimburse Olsen for whatever sum he is compelled to pay to satisfy the judgment obtained against him. (*Gerson v. Harrison*, 34 Kan., 590.) The question in this case is not whether under our Code Storz & Iler are proper parties defendant, but are they liable to the attaching debtor on an undertaking which they never signed, and which does not on its face purport to bind them? The answer must be in the negative. It follows that the judgment should be affirmed as to Olsen, and reversed and dismissed as to Storz & Iler.

JUDGMENT ACCORDINGLY.

IRVINE, C., not sitting.

RAGAN and RYAN, CC., dissenting.

Section 41 of the Code of Civil Procedure provides: "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein." Cer-

tainly the plaintiff in the attachment suit has an interest
in this case adverse to that of the plaintiff herein.   If
this suit proceeded to judgment against the surety on the
attachment bond only, then the plaintiff in the attach-
ment would be liable to the attachment surety for what-
ever sum the latter might be compelled to pay on that
judgment.   What are the questions involved in this ac-
tion?   Whether such attachment was wrongfully ob-
tained, and, if so, what damages the defendant thereto
has sustained thereby; and certainly the plaintiff in the
attachment suit is a necessary party to a complete deter-
mination or settlement of these questions.   This section
of our Code was copied from the Code of Ohio, and in
*Osborn v. McClelland*, 43 O. St., 284, the supreme court of
that state declared that this section was a legislative
adoption of the equity rule for the prevention of a mul-
tiplicity of suits; and in *Penn v. Hayward*, 14 O. St., 306,
the court held that this section of the Code was per-
missive, and whether one should be made a party de-
fendant to an action was somewhat discretionary, but
the court declared that if the effect of omitting a defend-
ant would necessitate another suit, the discretion of
the district court should be limited.   Section 50a of the
Code of Civil Procedure provides that "any person who
has or claims an interest in the matter in litigation may
intervene and become a party to such an action."   If
this suit, then, had been brought only against the surety
on the attachment bond, we think it clear that the plaint-
iffs in the attachment suit would have had the right to
intervene therein, as they were ultimately liable for the
judgment rendered against the defendant in that action.
Section 100 of the Code of Civil Procedure provides that
"the defendant may set forth in his answer as many
grounds of defense, counter-claim, and set-off as he may
have;" and section 101 provides that "the counter-claim
*   *   *   must be one existing in favor of a defendant
and against a plaintiff between whom a several judgment
might be had in the action, and arising out of the con-

tract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action." From the record before us it appears that the plaintiffs in the attachment suit recovered a personal judgment in their main action against the defendant in the attachment. Now, in this suit by the attachment defendant on the attachment bond for damages for the wrongfully obtaining of the judgment, and for the payment of which judgment the plaintiffs in the attachment suit are ultimately liable, it is clear that the plaintiffs in the attachment might counter-claim as against the plaintiff in this action the amount of their judgment, because it exists in their favor against the attachment defendant and it arises out of the transaction set forth in the petition herein. It was not necessary for plaintiff in the attachment to sign the undertaking (*Eckman v. Hammond*, 27 Neb., 611), but it was none the less the bond or contract of the plaintiffs in the attachment. Section 200 of the Code of Civil Procedure provides that an order of attachment shall not be issued until there has been executed by one or more sufficient sureties of the plaintiff in attachment an undertaking, and this undertaking shall be to the effect that the plaintiff in the attachment will pay the defendant in attachment all damages which the latter may sustain by reason of the attachment, if the order be wrongfully obtained. Olsen, who signed the attachment bond, was simply the surety of the plaintiffs in attachment. It was in law the bond—the contract—of the plaintiffs in the attachment suit. (*Wolf v. Hahn*, 28 Kan., 588.)

It is the policy of the Code that all disputes existing and arising between parties, growing out of the same transaction, shall be settled in one action. The question now under consideration was before the supreme court of Montana in *Hoskins v. White*, 32 Pac. Rep., 163. That was a suit on an attachment bond for damages because the order of attachment had been wrongfully obtained. The plaintiffs in the attachment suit had not

signed the undertaking, but had been joined as defendants with the surety in the suit thereon. The district court held that the plaintiffs in the attachment could not be joined as defendants in the suit, and this holding was reversed. It appears that the attachment law of Montana and the provisions of its Code in reference to parties to suits are similar to ours. The court said: "The subject of the action is the damage committed by the wrongful attachment. The principal and sureties are all liable for one and the same thing, to the amount for which the undertaking provides.   *   *   *   Section 16 of the Code of Civil Procedure provides that 'any person may be made defendant who has or claims an interest in the controversy adverse to the plaintiff.' Is not the principal, who caused the attachment and whom the sureties guarantied would pay the damage, a party in interest adverse to the plaintiff? He is bound to reimburse the sureties for whatever they are compelled to pay on his behalf in the premises." (*McIntosh v. Hurst*, 6 Mont., 287; *Pierse v. Miles*, 5 Mont., 549; *Jennings v. Joiner*, 1 Cold. [Tenn.], 645.) In 1 Shinn, Attachment, section 169, it is said: "The sureties by executing the bond, and the plaintiff by invoking the writ only, all become liable to actual damages occasioned by the wrongful issuing of the writ. (See, also, *State v. Fortinberry*, 54 Miss., 316; Waples, Attachment & Garnishment [2d ed.], sec. 183.) We reach the conclusion, therefore, that in a suit upon an attachment bond for damages for wrongfully obtaining the attachment the plaintiffs in the attachment are proper parties defendant to such action, although they did not sign such bond; because they have an interest in the controversy adverse to the interest of the plaintiff; that the attachment bond is in law as much the bond and contract of the plaintiffs in the attachment as if they had actually signed it; and that in a suit upon such bond there is but one cause of action, namely, the wrongfully obtaining of the order of attachment, and on this cause of action the plaintiffs in the attachment and the surety

on the attachment bond are jointly and severally liable to the defendant in the attachment suit.

1. In the case at bar the plaintiff pleaded the issuing of the attachment; its levy upon the plaintiff's property; that the attachment was wrongfully obtained and was afterwards, by the court issuing it, discharged.   The answer of the surety traversed these allegations, while the answer of the plaintiffs in the attachment admitted the dissolution of the attachment.   The evidence shows that a motion was filed to discharge the attachment; that on the same day the plaintiffs therein filed affidavits in support of their attachment; that the defendant in the attachment filed affidavits in support of his motion to discharge, and that on hearing by the court the motion to dissolve the attachment was sustained.   There is no intimation in the record that the order discharging the attachment was superseded, or that it was procured by collusion or fraud.   The district court instructed the jury that to entitle the plaintiff in this case to recover they must find from the evidence, among other things, that the attachment had been dissolved in due course of law. On the former hearing we held that this instruction was erroneous, because the court did not tell the jury that to enable the plaintiff to recover they must find from the evidence not only that the attachment had been dissolved, but that it had been dissolved because the facts alleged to procure its issuance did not exist or were untrue.   We think in that conclusion we were mistaken. To sustain us in that view we cited *Eaton v. Bartscherer*, 5 Neb., 469, but a careful examination of that case leads to the conclusion that it is not in point here.   That case was a suit on an attachment bond, and the question was whether the petition filed stated a cause of action.   This court said: "There is no agreement to pay all damages that might be occasioned by the attachments, in any event, but only in case it should be established that the orders of attachment were wrongfully sued out.   In these petitions there is no charge that these orders of attach-

17

ment were wrongfully or unjustly obtained, nor is there
any statement from which that fact can possibly be in-
ferred. There is, to be sure, in each of them an allega-
tion that after the attached property had been sold and
the proceeds applied upon the judgments, in pursuance
of the orders of the court, proceedings in error were
prosecuted which resulted in the dissolution of the at-
tachments. * * * We are of opinion, therefore, that
in failing to allege or to show by reasonable inference
that the orders of attachment were wrongfully sued out
* * * these petitions are fatally defective," etc. It is
obvious that in the petitions in those cases the plaintiffs
not only failed to allege that the attachments had been
wrongfully obtained, but they failed to allege that the
attachment had ever been discharged. Their pleading,
in effect, was that the main actions in which the attach-
ments were issued had proceeded to judgment; that the
court had made an order sustaining the attachments and
ordering the attached property sold, and that the de-
fendants in those actions had, by proceedings in error,
suspended the judgments, and therefore they concluded
that superseding the judgments rendered in those actions
had discharged the attachments. We think, then, that
we correctly held in that case that those petitions did
not state a cause of action. But here the evidence shows
that a motion was made to discharge the attachment;
that affidavits were filed in support of the attachment
and in support of the motion to discharge, and that on
the hearing this attachment was discharged. The order
dissolving this attachment was a judgment. The court
could not have dissolved the attachment without finding
that the order of attachment had been wrongfully ob-
tained, and the finding and order made on the hearing
to discharge the attachment conclude and estop the par-
ties to the attachment proceedings. The language of the
statute is that the plaintiff shall pay all damages which
the defendant in attachment may sustain by reason of
the attachment, if the order be wrongfully obtained.

When is an order of attachment rightfully obtained? It is rightfully obtained when the facts exist which the statute requires to exist to enable a party to avail himself of the attachment remedy, and when the party suing out an attachment complies with all the provisions of the law, such as filing an affidavit alleging certain things and the causing to be executed for the benefit of the defendant in attachment an undertaking conditioned as the law requires; and the converse is true, that the attachment is wrongfully obtained either when the facts do not exist which authorize the issuance of an attachment, or when the party suing it out has failed to comply with some requirement of the statute. Attachment is not a common-law remedy, but is purely a creature of the statute, and the same statute that has authorized a resort to the remedy by attachment has specifically pointed out what facts must exist before a resort to that remedy can be had; and it has quite as specifically provided just what the party resorting to the remedy shall do in order to be entitled to that remedy. If the necessary facts exist, and the party using the remedy complies with all the requirements of the statute, then the attachment is rightfully obtained and the sureties are protected. If none of the facts exist which the law says must exist in order that the remedy may be resorted to, or if the party using the writ does not comply with all the things with which the statute says he must comply, then the writ is wrongfully obtained. In other words, a party who resorts to the remedy of attachment does so at his peril; and the party who signs the attachment bond guaranties not only that the facts exist which the law requires shall exist in order that the remedy of attachment may be resorted to, but that the party using the writ has done and will do everything required by the statute to be done in order that he may avail himself of this extraordinary remedy. This brings us to the question of the effect as evidence of the judgment or order of the court dissolving an attachment when offered in evidence in a suit on an

attachment bond for damages for wrongfully obtaining the attachment.

Is this judgment or order dissolving the attachment conclusive evidence that the order of attachment was wrongfully obtained? There is a seeming conflict among the authorities, but this is largely due to the peculiar provisions of the attachment laws of the various states. The rule, and the correct rule, we think, is laid down in *Jerman v. Stewart*, 12 Fed. Rep., 266, where the court, in a suit upon an attachment bond, construing the attachment law of the state of Tennessee, said: "The wrongful suing out contemplated by these sections is conclusively proved by a judgment of the court in favor of the defendant in the attachment proceeding." In *Kennedy v. Meacham*, 18 Fed. Rep., 312, a suit for damages on an attachment bond for wrongfully issuing the attachment, the court charged the jury that the order dissolving the attachment was conclusive on the right of the plaintiff "to secure the actual damages resulting to him from the wrongful suing out of the attachment. The only possible question for you on this branch of the case is the amount of the actual damages." This case was another construction of the attachment law of the state of Tennessee, and the ruling was followed by the supreme court of that state in *Renkart v. Elliott*, 11 Lea [Tenn.], 235. In *McDaniel v. Gardner*, 34 La. Ann., 341, it was held that when "the judgment is simply one of non-suit, the fact of the dissolution of the attachment is a finality and entitles defendant to damages for a wrongfully taken attachment." In Drake, Attachment [7th ed.], section 185*b*, it is said: "Though a writ issued by competent authority and regular on its face will afford protection to an officer acting under it, it does not, if issued irregularly, afford the same protection to the party who caused its issue. The responsibility rests upon him not only to see that it is right in those particulars, but that it was regularly issued; for if it be set aside for irregularity, that makes the party a trespasser *ab initio* and affords him no protection as to

what has been done under it; as to him, it is then as though no process had ever been issued, and the property attached had been taken and detained by his order without any process." In *Seattle Crockery Co. v. Haley*, 33 Pac. Rep. [Wash.], 650, an affidavit for attachment alleged that defendant was about to dispose of its property with intent to defraud his creditors, and that it had so disposed of its property, or a part thereof. A traverse of such allegations was followed by an order to discharge the attachment, on the oral proofs of the parties, no findings being made. It was held that the order dissolving the attachment was a final adjudication that the attachment had been wrongfully obtained. *Hayden v. Sample*, 10 Mo., 215, was a suit upon an attachment bond. On the trial the defendants objected to the record of the proceedings which resulted in the discharge of the attachment. The court said: "But the truth of the affidavit made to obtain the attachment was not in issue here and could not be put in issue. The only inquiry in reference thereto and material in this case was the fact that an issue had been made, tried, and found against the plaintiffs, and that damages had by reason thereof accrued to the defendant." If in this action the defendants may retry the question as to whether the attachment was wrongfully obtained,—that is, whether the facts averred to obtain the attachment were true or existed,—then the order or judgment made by the court on hearing the motion to discharge the attachment was not binding upon any one. Suppose the petition in this case alleged the issuing of the attachment, the seizure of the property, a motion made to dissolve it, and that the court had overruled the motion and yet had averred that the attachments were wrongfully obtained. Can it be possible that the petition would have stated a cause of action on the attachment bond? Is it not clear that in such a case the order or judgment of the court sustaining the attachment would have been a conclusive adjudication that the attachment was rightfully obtained, and that the plaint-

iff had no cause of action upon his bond? But estoppels must be mutual, and if such a judgment or order of the court would preclude the attachment defendant from a suit upon the bond, it seems impossible to escape the conclusion that the judgment or order dissolving the attachment is conclusive evidence against all parties to the attachment proceeding that the attachment had been wrongfully obtained. This judgment is as binding upon the surety of a bond as it is upon the plaintiff in the attachment proceeding.

The principle underlying this question under consideration was extensively discussed in *Braiden v. Mercer*, 44 O. St., 339. This was an action upon a guardian's bond for the recovery of the amount found due his wards upon a final settlement and order of the guardian's account in the probate court. The sureties on the bond contended that they were not concluded by that settlement; but the court held that, in the absence of fraud or collusion, the judgment of the probate court against the guardian was conclusive evidence against the sureties of the amount owing by him to his wards. Owen, C. J., said: "By their bond the sureties contract with reference to the action of a court, and that their principal will obey its orders and conform to such action. Can they say they are strangers to such proceedings? Upon their principal's failure to obey the orders of the court, there is clearly a breach of the bond. The relation they assume to such court and its action so far makes them privy to the proceedings affecting their principal as to deny to them the right, when called upon to answer for the breach of the bond, to call in question the grounds upon which the court based its action, and to have the same cause retried. We find in our law numerous illustrations of this principle. The sureties in an undertaking in attachment contract to pay the defendant all damages sustained by reason of the attachment if the order prove to have been wrongfully obtained. Has it ever been doubted that the determination by the court in the at-

tachment proceeding that the order was wrongfully obtained concluded the sureties upon that question in an action upon their undertaking?   By an undertaking in replevin the sureties contract that their principal will duly prosecute the action and pay all costs and damages which may be awarded against him.   Nobody will claim that the award of damages in the replevin suit is not final against the sureties in an action against them upon the undertaking.   An undertaking in an injunction proceeding is conditioned to secure the party enjoined the damages he may sustain if it be finally decided that the injunction ought not to have been granted.   It has never been suposed that the sureties, in an action against them, could be heard to say that they were strangers to the injunction proceeding, and that the decision of the court that the injunction ought not to have been granted should be disregarded and that question again litigated." *Lothrop v. Southworth*, 5 Mich., 436, was a suit upon an injunction bond conditioned that the applicant for the injunction would pay the defendant all damages he might sustain should it be finally decided that the injunction ought not to have been granted.   The surety on the injunction bond contended that as he was not a party to the injunction suit, that he was not concluded by the decree dissolving the injunction; but the court held that the decree was not only conclusive as against the plaintiff in the injunction suit, but upon the surety upon the injunction bond as well.   The court said: "The cause was to be litigated by Lothrop;   *   *   *   Cleveland [the surety on the injunction bond] could not be heard in court, as he had no interest in the subject of the controversy.   He, as an indifferent person, stepped in to the aid of Southworth to enable him to prosecute his action, and undertook that he should abide the judgment of the court.   He can, therefore, raise no question as to the correctness of the decree, nor impeach it in this collateral proceeding.   If he apprehends any fraudulent collusion between the parties to the decree, his remedy is in chan-

cery for relief against the bond. * * * To hold otherwise would be to introduce a dangerous and novel doctrine into the law of remedies, viz., that when an action is brought upon a bond given for the performance of a decree against principal and surety, the whole subject of the decree must be relitigated, if a defense is set up impeaching it, before a joint recovery can be had. We apprehend that such a rule would make litigation endless." The principle upon which these two cases rests is that the surety on an injunction, replevin, or attachment bond is a privy to the proceeding in which the bond was used; that the surety was aiding and abetting the action, and in that sense a party and bound by the judgment rendered in the proceeding. The same principle was applied by this court in *Turner v. Killian,* 12 Neb., 580; *Pasewalk v. Bollman,* 29 Neb., 519; *Thomas v. Markmann,* 43 Neb., 823.

In order that the litigant should have an attachment the statute requires him to swear that the cause for which he sues is just. Suppose that all the requirements of the statute are complied with except that the affidavit for attachment contains no such averment. The absence of this averment would not render the attachment proceedings void, but merely irregular, and the affidavit for attachment could be amended. (*Struthers v. McDowell,* 5 Neb., 491.) But suppose the attachment is assailed by motion to dissolve because of the absence of this averment from the affidavit and the plaintiff in attachment does not seek to amend and the court discharges the attachment. In the meantime the property of the defendant has been seized and he has been injured, perhaps ruined. Has he no remedy on the bond? If the averment required by the statute had been in the affidavit it would have been rightfully obtained and the surety on the undertaking would have been protected; but as the averment was not there, and as the statute forbade the resort to the attachment remedy without such an averment, the attachment was wrongfully obtained. In the

case supposed, had the court refused to discharge the attachment because of the absence of such averment, such action of the court would have been equivalent to its judgment that the attachment was rightfully obtained, and that judgment, though erroneous, would not have been void and could not have been called into question in any collateral proceeding; so that it comes to this: That an attachment is rightfully obtained when the facts exist which the law requires must exist in order to authorize a resort to the remedy, and when the plaintiff suing out the attachment has complied with all the provisions of the law; and an attachment is wrongfully obtained when the facts alleged for its issuance do not exist, or when the plaintiff in the attachment has failed to comply with some requirement of the statute to entitle him to an attachment. And whether rightfully or wrongfully obtained is proved by the judgment or order of the court sustaining it or discharging it, so long as such judgment or order remains unsuperseded and unimpeached for collusion or fraud. We reach the conclusion, therefore, that in a suit upon an attachment bond for damages for wrongfully obtaining the attachment that the judgment or order of the court dissolving the attachment is conclusive evidence that the attachment was wrongfully obtained.

2. In the fourth paragraph of the syllabus of this case as reported in 48 Neb., 27, we said: "To maintain an action independently of the statute, and not on the bond, malice in suing out the writ and want of probable cause must be averred and shown;" citing *Palmer v. Keith,* 16 Neb., 91, and *Jones v. Fruin,* 26 Neb., 76. Those cases are not authority for any question involved in this action, as neither of them was a suit upon an attachment bond. It has always been the policy of the law to encourage the citizen to resort to the courts for the redress of his grievances, and in conformity with this policy the rule of law is that one cannot be made liable in damages for using the process of the courts in any action, provided he acted

with probable cause and without malice. This is the doctrine upon which the last two cited cases rest, and we must not be understood from anything said in this opinion as modifying those cases in any particular whatever. This action is not one for malicious attachment. It is not a common-law action, but is an action founded upon a statutory bond. The judgment of the district court should be affirmed.