THE STATE, USE OF LAWRENCE COUNTY, *v.* M. M. FORTINBERRY.

1. ATTACHMENT BY COUNTY. *Bond.*
    The board of supervisors can give bond, and maintain an attachment in behalf of the county. CAMPBELL, J., dissented.

2. SAME. *Bond binding sureties alone.*
    A bond executed by sureties, even though it fails to bind the county, is sufficient to sustain the attachment. CAMPBELL, J., dissented.

3. SAME. *Damages.*
    In such· case the sureties by executing the bond, and the county by invoking the writ, are both liable for all actual damages sustained from its wrongful issuance. CAMPBELL, J., dissented.

4. SAME. *Case in judgment.*
    A bond with two sureties, executed in the name of the board by its retained attorney, is sufficient to maintain an attachment, if thereafter ratified and adopted by an order on its minutes. CAMPBELL, J.,· dissented.

ERROR to the Circuit Court of Lawrence County.
Hon. A. G. MAYERS, Judge.

This was an attachment suit against M. M. Fortinberry, late treasurer of Lawrence County, for the sum of $3,062.75, for which he was alleged to be a defaulter. The board of supervisors of the county employed J. B. Chrisman, an attorney-at-law, to institute the suit, who commenced it by attachment, making the affidavit of the non-residence of Fortinberry and his indebtedness to the county. The attachment

bond showed in its body, as principal, " The Board of Supervisors of the County of Lawrence," and two sureties; and was signed and sealed with the signature and seal, " The Board of Supervisors of the County of Lawrence [seal]," and also signed and sealed by the two sureties.   The attachment writ was issued and levied on lands as the property of said Fortinberry.   At the return term a declaration was filed in the name of the State for the use of Lawrence County, on the official bond of said Fortinberry as county treasurer, his sureties not being sued.   The defendant appeared by attorney, and by motion raised the question, that the plaintiff had no power to execute an attachment bond, and that therefore the writ was void.   The motion was sustained, the suit dismissed and the plaintiff sued out this writ of error.

*George E. Harris,* Attorney-General, for the plaintiff in error, made an oral argument.

*Chrisman & Thompson,* on the same side.

1. The board of supervisors are directed to bring the suit, Code 1871, §§ 269, 1363, 1384, 1385; and may give the necessary bond, 33 N. Y. 333.   Damages awarded, in the event of failure of the suit, as well as costs, would be a claim against the county within § 1384.   Green's Brice's Ultra Vires, 182, and note.

2. The authority of Chrisman to execute the bond is proved. Corporations may authorize the exercise of such power by an order entered on their minutes; or, by subsequent ratification, may cure all irregularities.   Green's Brice's Ultra Vires, 356, note, 471; *Lewenthall* v. *State,* 51 Miss. 645.

*B. Taylor,* for the defendant in error, argued orally, and filed a brief, making these points: —

1. No statute has invested a county with the power to execute an attachment bond, nor authorized any of its officers to execute one for the county.   Constitution, art. 1, § 2; Code 1871, § 1425; Drake on Attachment, § 183; *Gilmer* v. *Wier,* 8 Ala. 72.

2. Even if the board of supervisors had the power to execute the bond, they could not delegate that power to Chrisman.

CHALMERS, J., delivered the opinion of the court.

Can the board of supervisors, acting on behalf of a county, sue out and maintain a writ of attachment?

By § 1384 Code 1871, it is enacted that any person having a just claim against the county, payment of which has been refused by the board of supervisors, may bring suit; and, when judgment has been obtained, " the property of the county shall be liable for the satisfaction of the same, as in other cases; and the board of supervisors are authorized to sue, and may be sued, in the name of the board of supervisors of the county of          , in all matters in which the county may be interested." By the succeeding section the supervisors are empowered to employ counsel " in all civil cases in which the county is interested."

The broad and general character of this language would certainly seem, by its phraseology, to embrace every character and description of actions which might be deemed necessary or expedient in order to protect the pecuniary interests of the county; and it will be readily admitted that the county should be denied no legal remedy for the protection of those interests, unless some insuperable obstacle forbids.

The obstacles which are supposed to stand in the way of the maintenance, by the county authorities, of an attachment suit, arise from the assumed inability of its officials to execute an attachment bond which shall be obligatory upon the county, or to institute any proceeding which can result in the infliction of damages upon the constituent body which they represent. It is said that inasmuch as under our laws the property of a defendant can never be seized under an attachment writ until the plaintiff has first executed a bond, with security, conditioned to pay such damages as may be sustained in case the writ shall be adjudged to have been wrongfully sued out, and judgment for such damages is to be rendered against both principal and sureties, in the same proceeding in which such adjudication takes place, the right to the remedy cannot exist where there is neither power to give the bond nor liability to the infliction of damages.

Conceding this to be true, let us inquire whether this inability to give a bond and this non-liability to the imposition of

damages do really exist with regard to the counties in this State. May not a county give a bond, or rather may not the board of supervisors give a bond, which will be binding on the county?

It is true that there is no statute specially authorizing them to do so, and that in matters of contract they bind the constituent body by agreements entered upon their minutes by order of the board in open session; but, even in matters of contract, we imagine that if by act of the legislature a board of supervisors was empowered to enter upon a negotiation which, *ex necessitate rei*, required the execution of a bond, as, for instance, if they were authorized to make a contract with the government of the United States, or of some one of the States, for the transaction of which it was known in advance that a bond would be required, in such case the power to execute it would necessarily follow from the authority to enter into the engagement. So, also, when the legislature, by one and the same code of laws, adopted at the same time, enacts that no suit by attachment shall be instituted without the giving of a bond, and that the board of supervisors are authorized to sue, and may be sued, "in all matters in which the county may be interested," we must infer that the greater includes the less, and that the authority to sue carries with it all powers necessary to make it effective. Thus it was said in *Bank of Augusta* v. *Conrey*, 28 Miss. 667, 670, that the authority to give a bond in legal proceedings would be presumed to exist in a corporation, as a necessary incident to the power of suing, without regard to the provisions of the charter on the subject.

It is no objection to this position to say that the remedy by attachment is extraordinary, and not embraced by the authority to bring suits generally, because, first, though extraordinary, it is still a suit, and because, secondly, bonds are frequently required in suits other than attachments; and, if there is no authority to give them, the county must be seriously crippled in the prosecution of many actions which cannot be termed extraordinary. It must be borne in mind that a county possesses none of the attributes of sovereignty, and when she enters the courts she does so subject to all the liabilities of a private person. Under what disadvantage must

she labor if she be not clothed, also, with the powers of one? With what hope of success could she prosecute a long and stubbornly contested chancery suit, where the stake was large and the merits intricate, if, upon the first demand for a bond, she must go out of court? How could she hope to defeat the most iniquitous demands, if she can execute neither a cost bond, nor an injunction bond, nor an appeal bond, nor any other of the various obligations that might be demanded of her? That such obligations have been constantly executed by the counties in this State, sometimes through the presidents of the boards of supervisors, sometimes by all the members of the board, and sometimes by agents and attorneys, will, we think, be abundantly demonstrated by the records of this and of the inferior tribunals. So far as we are advised, the validity of these bonds has never before been questioned.

In the present instance the bond was executed in the name of the board of supervisors by the attorney, who had been specially retained by the board; and thereafter the board, by a formal order upon their minutes, ratified and adopted his act as their own. It was signed, also, by two sureties. This was sufficient.

Is it true that the county would not be liable to damages for the wrongful suing out of an attachment? If so, clearly she cannot maintain one, because the right of the defendant to recover damages is essential to the existence of the remedy. The board of supervisors in many ways may subject the county to damages, either by the manner in which duties incumbent on the county are performed, or by breach of contracts into which they have entered with private individuals. Why may not the same result follow where suits have been improperly instituted, which have inflicted loss upon the opposing parties? If it be said that it would be dangerous to confide to any portion of the magistracy of the county the right to exercise a power which might result in the imposition of ruinous damages on the tax-payers, the obvious reply is, that it is impossible to carry on governments without confiding power to public officials, and that it is better to take this risk than to leave the counties powerless to exert functions possessed by every individual, and which may frequently be essential to the

protection of their interests. Every litigant, perhaps, dislikes the risk that he runs in giving an injunction or attachment bond; but better this than to be deprived of their advantages.

We conclude that a county may sue out an attachment, and that in so doing she subjects herself to the same measure of actual damages as a private litigant; and this liability to damages would ensue whether she executed a bond or not, because, so far as the plaintiff in attachment is concerned, his liability springs not from the bond, but from the wrongful institution of the suit. A county could never be subjected to punitory damages, because fraud or malice could not be imputed to her.

This view leads us to the further conclusion, that where a bond has been in fact given (as in this case) with security, the attachment will be maintainable, even though it was improperly or illegally executed, so far as the county was concerned, or even if it did not purport to bind the county at all. The defendant is undoubtedly entitled to a judgment for damages both against the plaintiff and his sureties; but in such a case the county would be liable, because she brought the suit, and the sureties, because they signed the bond. Thus we think that, independently of our statute authorizing married women to execute bonds in suits concerning their separate property, they could maintain an attachment by giving bonds signed by sureties, though not signed by themselves. It has been repeatedly held, both in England and America, under statutes which declared that litigants should only have certain remedies by executing bonds with security, that it was sufficient if the bond was executed by the surety alone, upon the principle that the party was bound by invoking the writ, and the surety by the bond; so that the opposing litigant had obtained all that he was entitled to. These decisions were made with reference to every description of bonds, whether for injunctions, for costs, for appeals or for attachments, and notwithstanding the statutes declared, in the most explicit terms, that *the plaintiff* should execute bond with security. *Barnes* v. *Bulwer*, Carthew, 121; *Keene* v. *Deardon*, 8 East, 298; *Dixon* v. *Dixon*, 2 Bos. & Pul. 443; *People* v. *Judges of Dutchess Co.*, 5 Cowen, 34; *Chandler* v. *Smith*, 14 Mass. 313;

*Taylor* v. *Ricards*, 4 English (Ark.), 378; *Thom* v. *Savage*, 1 Blackf. 51.

Our conclusion is, that the board of supervisors of a county can give a bond, and that, even if they fail to execute one, an attachment writ sued out at their instance is maintainable, if they deliver a bond signed by good and sufficient sureties. In such case both the county and the sureties will be bound for all actual damages sustained by reason of its wrongful issuance.          *Judgment reversed and cause remanded.*

SIMRALL, C. J., concurred.

CAMPBELL, J., delivered the following dissenting opinion: —

I entertain serious doubt as to the correctness of the views presented in the opinion of the majority of the court.

Attachment is the creature of statute. It is a special and extraordinary remedy, existing as conferred, and available only to those persons and in those instances clearly embraced in the statute creating it. A bond is a condition precedent to the issuance of an attachment; and this bond must be executed by the plaintiff, or his agent or attorney in fact. Code, § 1425. The grounds on which an attachment is sued out may be traversed by the defendant, by plea in abatement, making an issue as to whether the attachment was wrongfully sued out; and, if this issue be found for the defendant, he is entitled to judgment against the plaintiff for all such damages as the jury may assess, and to execution for this amount against the plaintiff, and to the amount of the penalty of the bond against the sureties. Code, §§ 1462, 1463. A plaintiff which cannot be held liable to the defendant for all such damages for the wrongful issuance of the attachment as are provided for by § 1462 of the Code, cannot be entitled to the writ; for a defendant is entitled to hold the plaintiff liable for damages for wrongfully suing out an attachment against him.

A board of supervisors may "sue and be sued," and employ counsel; but no statute confers the right to give an attachment bond, or to appoint an agent or attorney in fact for such purpose, or subjects a county to liability for damages for wrongfully suing out an attachment. It must, therefore, be assumed

that it was not in the contemplation of the legislature that a board of supervisors should be entitled to an attachment. True, an attachment is a suit, but it is not an ordinary suit; and the right conferred on boards of supervisors to sue, though general and in terms broad enough to embrace suing by attachment, cannot be held to embrace it, because of the absence of provision for the antecedents and incidents of an attachment suit. The right to an attachment can rarely be of much value to a county. To subject a county to the hazards of a merciless verdict by a jury, regarding the public as lawful prey for damages for the wrongful suing out of an attachment by some one professing to represent the county in doing so, is, in my view, of very doubtful propriety as matter of policy.