In The Matter of The Extension of The Boundaries
of The City of Gulfport, Mississippi
Butler, et al. *v.* City of Gulfport, Mississippi

No. 43602 October 18, 1965 179 So. 2d 3

*Victor B. Pringle,* Biloxi; *Upton Sisson, Blass & Smith,* Gulfport; *Forrest B. Jackson,* Jackson, for appellants.

740

*Owen T. Palmer, Eaton, Cottrell, Galloway & Lang,*
Gulfport, for appellee.

JONES, J.

The City of Gulfport adopted an ordinance extending its corporate limits to include adjacent territory, the said ordinance and subsequent proceedings being in accordance with Mississippi Code Annotated sections 3374-10, 3374-11, 3374-12, 3374-13 (1956). This appeal is from the decree of the Chancery Court of Harrison County which ratified and approved the proposed enlargement with the exception of that portion thereof lying north of Bernard Bayou about which no evidence was offered.

From this decree the objectors appeal. We are affirming the case.

The facts, insofar as the territory confirmed by the chancellor is concerned, are very similar to those in Dorothy E. Bridges v. City of Biloxi, Mississippi, (Miss.), 178 So. 2d 683, 180 So. 2d 154, 641.

On appeal the objectors present the following assignments:

1. That the proposed annexation includes a part of the Biloxi Municipal School District which is described

in this case as the Fernwood School Area, and that annexation of such area would practically destroy the Fernwood School;

2. That it is violative of both the state and federal constitutions for a municipality to extend its boundaries to include those who are not permitted to vote on their inclusion and tax them for the existing indebtednesses owed by the municipality so expanding its boundaries; it also argued that it is violative of the objectors' civil rights;

3. The proposed expansion is unreasonable, not in the public convenience and necessity of all the people affected, and not feasible from a financial standpoint; and,

4. That the decree and ordinance are void for failure to describe the territory within the expanded area and the corporate limits of the expanded area as required by law.

The ordinance as originally adopted included land lying north of what is known as Bernard Bayou and also included a tract in the northwest corner of Section 23, Township 7 South, Range 11 West, in Harrison County, Mississippi, which tract of land was south of Bernard Bayou. The City on the hearing introduced no evidence relative to the territory north of Bernard Bayou and, accordingly, the same was excluded from the decree of the chancellor approving and confirming said extension. There was no objection to the inclusion of the tract of land in the northwest corner in said Section 23. The controversy, therefore, involved that land lying east of the east boundary of the City of Gulfport, as then existing, south of Bernard Bayou, west of the City of Biloxi boundary, as extended, and north of the Mississippi Sound. The Biloxi School District lands included in said tract were the west three-quarters of Section 29, Township 7 South, Range 10 West, lying south of Bernard Bayou. This area was not in the limits of the City

of Biloxi, as extended. The only objection made by the Biloxi Municipal School District was that by the inclusion of same in the Gulfport Municipal School District the Biloxi District would be deprived of somewhere between 150 and 160 students, of a total of nearly 9,000 in the Biloxi Municipal School District. The argument was made that the exclusion of these students would reduce federal assistance. However, it was not shown how much the school district would lose. It was argued that the Biloxi District had a large investment in the Fernwood School buildings, and that the effect upon the district would be unreasonable and disasterous. However, the legislature has recognized that municipal school districts may be affected by the extension of city boundaries. Miss. Code Ann. § 6328-76.5 (Supp. 1964), Miss. Code Ann. §§ 6411.06, 6411.07 (Supp. 1964). The City of Biloxi had not included such territory in its own expanded boundaries; so, if it was not included in the expansion of Gulfport, we would have a bare area with no municipal control or assistance at all. There would be a small area between the two municipalities bounded on the west, south, and east by said municipalities but forming no part thereof and with no benefits that accrue from being within the limits of a city. The chancellor heard the testimony and found that, while it was impossible to satisfy everybody in a case of this sort, there was nothing unreasonable about the inclusion of this area in the Gulfport district. With this finding we agree.

 As to the second point involving the constitutionality of these actions, this question was involved and decided in the *Biloxi* case, supra, and it is unnecessary for us to add anything to what was there said.

 As to the third question presented, we are of the opinion the evidence was ample to show the expansion was reasonable and to support the finding of feasibility.

The area of the City of Gulfport was approximately 12,350 acres; the area of the contested portion of the extension was something over 3,000 acres. The population of the city was from 28,000 to 30,000; the population of the contested area was about 7,500.

The objectors, other than the municipal separate school district, offered no evidence to rebut the testimony introduced by the city, and the proof of the Biloxi Municipal Separate School District was confined solely to the effect the expansion would have upon the Fernwood School.

It was shown by officers of the health department that many of the houses within the contested area were served by septic tanks and cesspools which overflowed and saturated the soil, creating a health hazard. The city proposed within the time set up by the ordinance to install a sewer system for this area.

The county engineer testified as to the lack of drainage in the area, and specifically that the area between what is known as the Pass Road, extending east and west through said area, and the L & N Railroad which runs in the same direction had no drainage, or at least no sufficient drainage, and water accumulated between the road and railroad and much of it ran into the eastern side of the City of Gulfport. It was also shown that what is known as the Brickyard Bayou (which flows easterly into Bernard Bayou) outside the City of Gulfport became flooded and, while same had been straightened to a large degree within the City of Gulfport, that outside the City was not straightened; this slowed the flow of the water and caused same to back into the City of Gulfport. It was also shown that the only police protection in the area was furnished by the sheriff; that there had been calls for assistance to the sheriff's office when the people calling were advised there was no deputy available. There were two constables also in the area, but this was not deemed to be sufficient police protection.

The only fire protection in this area was that furnished by a volunteer fire department, supplied with a truck, or trucks, with a 750 gallon capacity tank. Most of the water supply in said district is from wells, and there is no pressure for fighting fires. There are no fire hydrants. The city proposed to furnish police protection by adding additional policemen for said area and installing therein a police station. The city was to furnish fire protection by supplying additional paid firemen, buying fire trucks, erecting a station, or stations, and installing an alarm system. This alarm system would connect with a station or stations in the district and the main station in the City of Gulfport. Also, the city would install a water system which would supply water pressure for the area.

Evidence was introduced showing that the City had a zoning ordinance, also ordinances fixing fire districts, providing for an electrical inspector, a building inspector, a zoning commission, and a planning commission. The city had been using the offices or services of an experienced firm of city planners and engineers to determine what should be done. These plans and suggestions of the engineers and the building and city planning firm were introduced in evidence, and it was shown that the City was undertaking to follow these plans and arrangements prepared by people experienced, educated, and trained in that field.

The growth in the assessment of the City of Gulfport and the new area over the recent years was shown. The city was already planning a new sewer and water system, and such improvements were awaiting the determination as to whether said area would be annexed. It was also planning corrections of the drainage system. While it was shown that there were some houses within the City of Gulfport not attached to the present sewer system, it was testified that they were undertaking to connect as many as possible of these houses in the new

work to be done. It was shown that the insurance rate in the area to be annexed was 150% of the rates in the City of Gulfport; that in all probability this rate would be reduced by fire stations and fire hydrants and a water system being installed. It was also proposed that street lights be given to the new area. It was shown that many of the streets in the new area were below par, and that the city proposed to correct this, together with paving some of the unpaved streets. The areas of recreation in the City of Gulfport were shown, and it was proposed that some similar areas would be installed in the area to be annexed, if annexed. Much testimony was taken to show the income of the city, the financial condition of the city, bonding ability, both as the city is presently constituted and as it would be constituted with said annexed territory. A plan for proposed bond issues (revenue and general obligations) for the doing of the necessary work was shown. A question was raised as to whether the bonds proposed to be issued, if issued as suggested, would be within the statutory limitations. The chancellor held that the validity of the bonds suggested was not presented here, but the evidence was simply for consideration by him in determining the financial feasibility of the proposed improvements with the cost thereof to be paid by the City as enlarged. There was much evidence introduced, and none of it was contradicted by the protestors or objectors. We believe from the record before us the chancellor was amply justified in holding that the extension, as approved by him and as recited by the decree was reasonable and feasible from a financial standpoint.

There is a claim that the provisions of Mississippi Code Annotated sections 3374-10 and 3374-13 (1956) required both the ordinance and the decree approving to describe with certainty the territory proposed to be included, and also to define the entire boundary as changed. Section 3374-10 covers the provisions of the

ordinance and does provide as contended by appellants. Section 3374-13 provides what the decree of the chancellor shall find, and says that insofar as the description is concerned when ratifying the ordinance the decree shall describe the boundaries of the municipality as altered. The decree in this case described the boundaries of the entire city as altered in the ratification and approval of the chancellor. We think this is sufficient.

Affirmed.

*Ethridge, P. J., and Rodgers, Patterson and Smith, JJ.,* concur.