557 So.2d 780 (1990)
In the Matter of the Enlargement of the Corporate Limits and Boundaries of the City of Gulfport, Mississippi.
HARRISON COUNTY
v.
CITY OF GULFPORT, Mississippi.
In the Matter of the Extension of the Boundaries of the City of Biloxi, Mississippi.
HARRISON COUNTY, Mississippi; Harrison County School District
v.
CITY OF BILOXI, Mississippi; City of D'Iberville; David Sanders Stockholders; Woolmarket Citizens; City of Gulfport Committee for Improvements of Orange Grove; North Gulfport Civic Club, Mississippi Power Company; Harrison County Development Commission; Mississippi Association of Educators.
Nos. 89-IA-511, 89-IA-546.
Supreme Court of Mississippi.
February 14, 1990.
*781 Boyce Holleman, Tim C. Holleman, Albert L. Necaise, Gulfport, Jerry R. Wallace, Montgomery Smith-Vaniz & McGraw, Canton, Larry L. Lenoir, Mize, Ingram, Matthews, Stroud & Lenoir, Gulfport, Charles Victor McTeer, McTeer & Bailey, Greenville, for appellant.
Hugh D. Keating, Dukes Dukes Keating & Faneca, Gulfport, Jerry L. Mills, Pyle Dreher Mills & Woods, Jackson, James K. Wetzel, Gulfport, Charles K. Pringle, Biloxi, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
The cities of Gulfport and Biloxi have separately brought proceedings for judicial confirmation of annexation ordinances, and our questions are whether Harrison County, acting through its board of supervisors, and as well, the Harrison County Board of Education, can appear in opposition. In each case the Chancery Court dismissed Harrison County as a party, and in the Biloxi annexation case the Court dismissed the Harrison County Board of Education as a party. We granted this interlocutory appeal to settle the important questions of whether a county as a body politic, and, as well, a county school board, (a) have standing to appear and object to these cities' annexations and (b) if so, whether they have legal power to exercise that standing.

II.

A.
On December 15, 1987, the City of Biloxi, Mississippi, filed in the Chancery Court for the Second Judicial District of Harrison County its Petition for Ratification, Approval and Confirmation of Ordinance No. 1509, Adopted by the City of Biloxi, Mississippi, on the day of November 20, 1987, extending and enlarging the corporate limits and boundaries of the City of Biloxi, Mississippi (hereinafter referred to as the "Biloxi Annexation"). Biloxi seeks to expand the land area within its corporate boundaries from its present 24.8 square miles to an area of 37.2 square miles, for an expansion of 12.4 square miles.
The City of Biloxi, Mississippi, lies in the Second Judicial District of Harrison County, Mississippi, and the entire area proposed for expansion is situated in Harrison County, Mississippi.

B.
On February 1, 1988, the City of Gulfport, Mississippi, filed in the Chancery Court for the First Judicial District of Harrison County its Petition for Ratification, Approval and Confirmation of Ordinance No. 1792, Adopted by the City of Gulfport, Mississippi, on the 19th day of January, 1988, enlarging the Corporate Limits and Boundaries of the City of Gulfport, Mississippi (hereinafter referred to as the "Gulfport Annexation").
By virtue of the ordinance, the City of Gulfport seeks to enlarge its corporate limits from its present area of 29.36 square miles to a total area of 83.01 square miles, for an expansion of 53.65 square miles. Gulfport lies in the First Judicial District of Harrison County, Mississippi, and the entire area proposed for annexation is situated in Harrison County, Mississippi.

*782 III.
The legal issues aside, the briefs and argument of counsel make clear that what is at stake is whether a county may finance the opposition to a municipal annexation. Harrison County notes language from our decision in Belhaven Improvement Association, Inc. v. City of Jackson, 507 So.2d 41, 46 (Miss. 1987) to the point that, without access to the county treasury, the objectors will be at a substantial disadvantage against the Goliaths Biloxi and Gulfport. By the same token, the cities' appellate opposition is predicated quite apparently on its wish for tactical advantage at trial. Notwithstanding, we search only the available legal sources for answers to the questions presented.

A.
We begin with our general rules on standing to sue.[1] Parties may sue or intervene where they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, see Dye v. State ex rel. Hale, 507 So.2d 332, 338 (Miss. 1987); Frazier v. State of Mississippi, 504 So.2d 675, 691-92 (Miss. 1987); Belhaven Improvement Association, Inc. v. City of Jackson, 507 So.2d 41, 45-47 (Miss. 1987), or as otherwise authorized by law, see, e.g., Canton Farm Equipment Co. v. Richardson, 501 So.2d 1098, 1105-09 (Miss. 1987); City of Pascagoula v. Scheffler, 487 So.2d 196, 198 (Miss. 1986). This view has been statutorily incorporated into our annexation confirmation procedure. Miss. Code Ann. § 21-1-31 (1972) authorizes intervention by any party "interested in, affected by or aggrieved by" a proposed annexation.[2]
Standing is like any other charge of a party's pleading. Harrison County's well pleaded allegations, where considered on their face, must be taken as true. Common Cause of Mississippi v. Smith, 548 So.2d 412, 415 (Miss. 1989); McFadden v. State of Mississippi, 542 So.2d 871, 874 (Miss. 1989); Wilkinson v. Mercantile National Bank, 529 So.2d 616, 618 (Miss. 1988). The factual components of a claim of standing, however, may be challenged via Rule 56, Miss.R.Civ.P. For example, if a county geographically remote from Biloxi or Gulfport were to assert a right to intervene and object to these annexations, the cities may well be able to show beyond peradventure the absence of a colorable basis in fact for the intervening county's claim of interest or effect and, if so, the court would have power to dismiss that county as a party for lack of standing under Section 21-1-31. On appeal, we would apply the same standards as the court below, viz., if there is no genuine issue of material fact on the questions of interest or effect such that we may say with confidence the objecting county lacks a colorable claim, the court should order dismissal of the objector. Huff v. Hobgood, 549 So.2d 951, 953 (Miss. 1989); Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 63 (Miss. 1988). On the other hand, to resist dismissal for lack of standing the objector is hardly required to prove it may prevail on the merits. The motion should be denied unless on the materials eligible for consideration under Rule 56, see Magee, Adm'x., etc. v. Transcontinental Gas Pipe Line Corp., 551 So.2d 182, 186 (Miss. 1989), it may be said the objector has no colorable basis for a claim of interest or effect from the annexation.
The Board of Supervisors of Harrison County, Mississippi, on January 25, *783 1988, adopted a resolution finding the proposed annexations by the Cities of Gulfport and Biloxi "inimical to the best interests and general welfare of the people of Harrison County"; that said annexations would adversely affect the areas proposed to be annexed, and that such would seriously affect the operation of the Harrison County School System in these areas; that Harrison County's tax base and its school system would suffer irreparable damage due to loss of taxpayers and students, etc. These findings suggest standing. Moreover, the interest of the county is derived from the interest of the citizens of the county living in or owning property in the areas tabbed for annexation. The board of supervisors is the governmental authority closest to those people and is surely charged to protect their welfare. From these thoughts it is a short step to Miss. Code Ann. § 21-1-31 (1972), which describes those who may appear and object to an annexation as "all parties interested in, affected by or being aggrieved by said proposed enlargement."[3]
Rules regarding standing, statutory or otherwise, import objective standards. Still, common sense suggests the party asserting standing would be more sensitive to whether its interests will be affected by an annexation  than would the annexing municipality or even the trial court. Cf. Hentz v. State, 489 So.2d 1386, 1388 (Miss. 1986). A party's assertion of an interest or effect goes a long way toward establishing that it has an interest in or will likely be affected by an annexation.
The cities would have us try the merits of the County's "findings" just to decide the standing question. In this context, In the Matter of Enlargement of Corporate Boundaries of the City of Pascagoula, 346 So.2d 904 (Miss. 1977) is instructive when it reminds us
[w]hat proof the objectors may or may not have been prepared to offer at the hearing bearing upon the question of the reasonableness of the proposed expansion is of course, impossible for us to know or foresee with any degree of accuracy.
Id. at 905. The Pascagoula Court goes on to point out the different parties affected by the city annexation:
Under the circumstances of the proposed expansion, affecting, as it must, the interest of a great many persons and corporations as well as functions and activities of Jackson County and other governmental entities within the area proposed to be annexed, it is impossible to predict at this stage of the proceedings what facts or circumstances may be developed in evidence having a bearing upon the reasonableness or unreasonableness of the proposed expansion. Obviously, the nature of the question is such that many factors may bear upon it and disadvantages as well as advantages will be relevant and properly considered as the expansion hardly could be considered reasonable if it should develop that the former outweigh the latter.
Id. (Interlocutory appeal from chancellor's order overruling city's motion to strike written objections to city's petition for annexation). Rule 56's modification of these views hardly detracts from their force today.
Without belaboring the point, the record is such that we may not say with confidence that Harrison County has no interest in, nor that it would not be affected by, these annexations, should either be confirmed. Within the meaning and contemplation of Section 21-1-31 Harrison County has standing to object to each of those annexations.

B.
It is intuitively apparent that the county as a body politic will experience a legally cognizable effect from annexations such as these and that the general requisites of standing to sue are easily satisfied. *784 Assuming this much, a separate question is presented whether the county is nevertheless disabled to sue, for Harrison County is not an ordinary litigant. The courts below seized upon this juridical reality and upon the familiar proposition that a county board of supervisors has authority to act only as provided by law, citing the early case of Howe v. State, 53 Miss. 57 (1876). Ordinary standing is not enough, for before it may proceed the county must legally be authorized to exercise its standing. We are told there is no specific statute authorizing a county to oppose an annexation, and, if it were so, the point would pack a punch.
We review this second question de novo, but for a different reason: it is essentially a question of law. See Cole v. National Life Insurance Company, 549 So.2d 1301, 1303 (Miss. 1989); Busching v. Griffin, 542 So.2d 860, 863 (Miss. 1989); Boggs v. Eaton, 379 So.2d 520, 522 (Miss. 1980), or, to be more precise, it is a different kind of question of law than that presented in Part III(A) above.
Both Gulfport and Biloxi and, as well, the courts below read the rule too strictly. To begin with, the general principle necessarily has common sense limits, for a board of supervisors could hardly function if we held its every act had to be previously authorized specifically and in detail. For one thing, authority not expressly provided may be exercised if "vested by necessary implication." Capital Electric Power Association v. Mississippi Power & Light Co., 218 So.2d 707, 715 (Miss. 1968); Jefferson County v. Grafton 74 Miss. 435, 442, 21 So. 247, 248 (1897). In State for Use of Lawrence County v. Fortinberry, 54 Miss. 316 (1877), the board of supervisors brought an action against one indebted to the county, and incidental thereto attached the debtor's properties lying within the county. The debtor appeared and challenged the authority of the board of supervisors to execute and file an attachment bond. Concededly, no statute authorized the board to make and file the bond. The Court noted the statute authorizing the board to sue "in all matters in which the county may be interested"[4] and held the authority to give the attachment bond, though not expressed, was necessarily implied. Fortinberry, 54 Miss. at 319. In Board of Supervisors of Carroll County v. Georgia Pacific Ry. Co., 11 So. 471 (Miss. 1892), the board brought an action against the railroad charging its conversion of the county's negotiable bonds. The railroad demurred, challenging the board's authority to maintain the action. The Court found no statute expressly empowering the board to bring the action but nevertheless held the demurrer should be overruled. The Court held the Board could sue under Miss.Code § 897 (1880) which entitled the county "to the benefit of all actions to which individuals are entitled in a given state of the case." In this vein Leflore Bank & Trust Co. v. Leflore County, 202 Miss. 552, 557, 32 So.2d 744, 746 (1947) teaches that "what others in business may do, the county in its authorized business affairs is free also to do unless otherwise commanded by law." Moreover, the Howe rule has been moderately but significantly relaxed by statute.[5] Miss. Code Ann. § 19-3-40 (Supp. 1989).
*785 Harrison County is a political subdivision of the State of Mississippi. State v. Board of Supervisors of Grenada County, 141 Miss. 701, 105 So. 541 (1925); Pidgeon Thomas Iron Co. v. Leflore County, 135 Miss. 155, 99 So. 677 (1924). Consistent with the general principle, a county has no right to sue incident to its being, but only as authorized by law. Leflore County v. Big Sand Drainage District, 383 So.2d 501, 502 (Miss. 1980); Brabham v. Board of Supervisors of Hinds County, 54 Miss. 363, 364 (1877). But when we turn to our statute books, we find three code sections which, read together, seem wholly adequate unto the day. In Miss. Code Ann. § 11-45-17 (1972), the legislature has enacted that
Any county may sue and be sued by its name, and suits against the county shall be instituted in any court having jurisdiction of the amount sitting at the county site; but suit shall not be brought by the county without the authority of the board of supervisors, except as otherwise provided by law
We long ago held this statute by necessary implication authorized a county to employ counsel and bring an action, denying that the authority should be limited to suits where the county had a pecuniary interest, for "it is to the interest of the county to maintain the peace and harmony of its inhabitants." Coahoma County v. Knox, 173 Miss. 789, 795, 163 So. 451, 452 (1935). This is hardly surprising, for the supervisors of each county in this state are charged generally to promote the peace, happiness, and economic and social welfare of the people they serve. See, e.g., Miss. Code Ann. § 19-7-3 (Supp. 1989), cited in Leigh v. Board of Supervisors of Neshoba County, 525 So.2d 1326, 1330 (Miss. 1988).
What is implicit in Section 11-45-17 has been expressed in Miss. Code Ann. § 19-3-47(1)(b) (Supp. 1989), which provides that
The board of supervisors shall have the power, in its discretion to employ counsel in all civil cases in which the county is interested... .
Miss. Code Ann. § 11-45-19 (1972) further elaborates a county's authority to sue.
Suit may be brought, in the name of the county, where only a part of the county or of its inhabitants are concerned, and where there is a public right of such part to be vindicated.
No reason is offered why we should afford these several statutes a reading other than as their words and phrasing ordinarily import, and upon reflection we see none. When we give these statutes a common sense reading, we see Harrison County acting by and through its board of supervisors legally empowered to proceed in court regarding matters affecting the county's interest. Section 19-3-47(1)(b) authorizes the county to employ counsel to act for it in all civil actions in which the county is interested. Section 11-45-17 says the county may sue and be sued in its own name, requiring prior authority from the board of supervisors. It is the board of supervisors which decides whether the county is interested in a matter, this Court's authority to intervene being limited to cases where the assertion is seen a sham. That only those Harrison County residents outside the present corporate limits of Gulfport and *786 Biloxi may have rights at stake is no obstacle, as Section 11-45-19 makes clear.

C.
The undercurrent dominating Gulfport and Biloxi's response is that the county shouldn't be allowed to oppose an annexation. We should protect the taxpayers of Harrison County from having public funds expended in this manner, or so the argument goes. The problem is that this day and this forum are inappropriate to that end. The statutes cited above empower the county to pursue litigation regarding matters in which it is interested. No rule of statutory construction would authorize our reading into these statutes "except in annexation cases." As no language in these general authorization statutes precludes Harrison County's opposition to Gulfport and Biloxi's annexation, we regard the supervisors' decision a political one, not subject to judicial review, and for which the supervisors are answerable only at the polls.
All seem to agree that a county should be permitted to oppose invasion from a municipality principally situated in an adjoining county. For example, all assume there was no problem with Madison County's appearance and opposition to Jackson's recent annexation. See City of Jackson v. City of Ridgeland, 551 So.2d 861 (Miss. 1989). Other states have allowed such opposition. See City and County of Denver v. Miller, 151 Colo. 444, 379 P.2d 169, 173-74 (1963) (Arapahoe County is a "person aggrieved" by City of Denver's efforts to annex territory within Arapahoe County); Elkins v. City and County of Denver, 157 Colo. 252, 257, 402 P.2d 617, 620 (1965) (same); DeKalb County v. City of Atlanta, 132 Ga. 727, 65 S.E. 72, 78 (1909) (DeKalb County has authority to object to Atlanta's efforts to expand from Fulton County and into DeKalb County). And so we are told Hancock County or Stone County would be legally empowered to object were Gulfport seeking to expand into one or both. But if this be so, Harrison County equally has authority to intervene and object today.
The question before us is whether the legislature has enacted that a county may appear and object at all. If an invaded county whose lands are being annexed has authority to object, so may a home county so long as our law is posited in its present form. It may well be that an adjacent invaded county's "interest" or "effect" may differ from that of a home county. This hardly proves a home county has no legally cognizable "interest" or "effect" from annexations such as these, and no inconsiderable difficulty attends the effort to articulate a legally cognizable distinction between the effects of Gulfport's annexation of 53.65 miles of incorporated Harrison County lands and the effect of a like annexation of Hancock or Stone County lands. If the authority exists it surely exists without regard to the particular county interest(s) at stake and without regard to the ground(s) on which the county may oppose the annexation. Put otherwise, if Harrison County has no standing to object to these annexations, this may only be because the law does not permit counties to contest annexations, period. As indicated above, we find that the authority to appear and object does exist and that the matter of whether and when that authority may be exercised is committed wholly to the discrete judgment of the board of supervisors.
We are told litigation between municipalities and counties is unseemly and that we should move to prevent it. The argument belies our history. See, e.g., City of Indianola v. Sunflower Co., 209 Miss. 116, 46 So.2d 81 (Miss. 1950) (county brought suit against city to confirm title to property); Town of Crenshaw v. Panola County, 115 Miss. 891, 76 So. 741 (1917) (suit between political subdivisions, town sought to recover tax money from county); City of Bay St. Louis v. Board of Sup'rs of Hancock County, 80 Miss. 364, 32 So. 54 (1902) (county sued city for room in courthouse used as city hall). If such suits be seen an evil, the legislature may certainly administer a cure.
A further objection is that residents of Gulfport and Biloxi pay taxes to Harrison County and have a right that their tax *787 dollars not be used to thwart their interests in the two annexations. The source of the right is never identified, nor is it apparent on reflection. The point requires a presumption that all taxpayers of Gulfport and Biloxi approve their city's annexation plans. The short answer is found in Section 11-45-19. The county may sue where only a part of its inhabitants have interests at stake. Citizens of Gulfport and Biloxi, unhappy with the actions of any of the governmental bodies litigating today, may find a remedy in the political and not the legal process.

D.
We hold that Harrison County's pleadings and the evidence before us are adequate to establish that it is a party interested in, affected by or aggrieved by each of the pending annexations within Section 21-1-31. As such, the County has standing to intervene and object to each annexation. Beyond that, a combined reading of Sections 11-45-17 and -19, and 19-3-47(1)(b) vests in the county, acting by and through its board of supervisors, authority to exercise its standing and to employ counsel and participate fully in each annexation and confirmation proceeding.

IV.
In the Biloxi case a like question is presented whether the Harrison County Board of Education may intervene and object.[6]
Over the years this Court has heard any number of annexation cases in which a school district appeared as an objector. The earliest of these cases  some twenty-four years ago  also arose from Harrison County. See In the Matter of the Extension of the Boundaries of the City of Gulfport, Mississippi, 253 Miss. 738, 740-41, 179 So.2d 3, 4 (1965) wherein the Biloxi Municipal Separate School District objected to an annexation by the City of Gulfport. A school district was the lead objector in Western Line Consolidated School District v. City of Greenville, 465 So.2d 1057 (Miss. 1985). More recently, school districts appeared as objectors in City of Jackson v. City of Ridgeland, Mississippi, supra, (Ridgeland Municipal Separate School District objected to annexation by City of Jackson); and in In re Enlargement of Corporate Boundaries of the City of Booneville, Mississippi, 551 So.2d 890 (Miss. 1989) (Prentiss County Board of Education objected to annexation by the City of Booneville). In none of these four cases is there any indication that any challenge was made to the school district's standing to object under Section 21-1-31, nor is there any indication of a challenge to the school board's authority to exercise its standing to object.
Without question, each of the annexations at issue would, if confirmed, extend the corporate boundaries of Gulfport and/or Biloxi into territories presently served by schools administered by the Harrison County Board of Education. The School Board's reason for believing that it will suffer an adverse effect from these annexations appears largely the product of its fear that much of its territory, students and assessed valuation will be stripped from it and added to the Gulfport Municipal Separate School District and the Biloxi Municipal Separate School District, respectively. There is no question but that prior to 1987 this would have been the case and, indeed, this is the principal basis upon which Western Line Consolidated School District challenged the annexation of the City of Greenville. See Western Line, supra; City of Greenville v. Farmers, Inc., 513 So.2d 932, 939 (Miss. 1987). All of this was a function of the pre-1986 version of Miss. Code Ann. § 37-7-611 (1972) which provides:
Where the corporate limits of any municipality which constitutes a municipal separate school district, either with or without added territory, are extended so as to include the whole or any part of an existing *788 adjacent school district in the county school system or municipal separate school district, then such adjacent school district, or such part thereof as is included within the corporate limits of the municipality by reason of the extension thereof, shall thereby automatically be merged with and become part of such municipal separate school district.
In 1986 the legislature repealed Section 37-7-611, and if that repealer were enforceable, it would go a long way toward removing the objections of the Harrison County School Board, or so it appears from the papers before us. The problem is that this repealer is said to affect voting practices and procedures and may be subject to preclearance by the Attorney General of the United States under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. On March 31, 1989, the Attorney General entered an objection letter refusing to preclear repeal of Section 37-7-611. In relevant part, the letter states:
Until the objection is withdrawn or a judgment from the District of Columbia court is obtained, the effect of the objection by the Attorney General is to make the repeal of Section 37-7-611 legally unenforceable. 28 C.F.R. 51.10.
As we have noted in two recent cases, the courts of this state have no authority to grant preclearance
which by virtue of Section 5 of the Voting Rights Act of 1965 may only be done by federal authorities. 42 U.S.C. § 1973c; Perkins v. Matthews, 400 U.S. 379, 388-95, 91 S.Ct. 431, 437-39, 27 L.Ed.2d 476, 484-89 (1971); Dotson v. City of Indianola, 514 F. Supp. 397, 399 (N.D.Miss. 1981). Until preclearance is forthcoming, we must enforce the law as it existed before the objected to change.
See City of Jackson, 551 So.2d at 868 n. 2; In re City of Booneville, 551 So.2d at 895; Bassett v. Town of Taylorsville, 542 So.2d 918, 920 n. 3 (Miss. 1989). See also Sperry Rand Corp. v. City of Jackson, 248 So.2d 810, 812 (Miss. 1971). Thus, until preclearance is forthcoming, we must enforce the law as it existed before the objected-to change. Hathorn v. Lovorn, 457 U.S. 255, 268-69, 102 S.Ct. 2421, 72 L.Ed.2d 824, 836-37 (1982).
At present we have no way of knowing whether and when the repeal of Section 37-7-611 may be precleared. Certainly the School Board's position and interest may be affected if preclearance is ultimately forthcoming. For the moment, common sense suggests the School Board remain in this case to protect its interest.
Nothing in our recent Booneville annexation case suggests affirmance of the Chancery Court's dismissal of Harrison County Board of Education from the Biloxi annexation case. In Booneville, we upheld chancery court confirmation of an annexation entered in the face of objection by the Prentiss County Board of Education, notwithstanding the fact that the repeal of Section 37-7-611 had not been precleared. In the first place, the Prentiss County Board of Education took no appeal from the Chancery Court's decision. More to the point, our decision in Booneville upheld the Chancery Court's holding that on the merits the Booneville annexation was reasonable, notwithstanding the School Board's objection. As indicated in Part III above, the fact that an annexation objector may ultimately lose on the merits hardly suggests that it lacks standing to press its objections.
The court below in today's case did not hold that the Harrison County Board of Education was not a party "interested in, affected by, or aggrieved by" the proposed enlargement of the boundaries of the City of Biloxi within the meaning and contemplation of Section 21-1-31. Rather, the sub silentio premise of the court's holding is that the School Board has standing within Section 21-1-31 but may not exercise that standing because, as a creature of the state, it has not been empowered to sue and be sued in this context.
Of relevance is Grenada Municipal Separate School District v. Jesco, 449 So.2d 226 (Miss. 1984). In that case, the Grenada Municipal Separate School District filed suit alleging that it had entered into a contract with Jesco to construct a school building and that Jesco breached the contract *789 because the building was defective and not constructed in a workmanlike manner. Jesco defended the action by maintaining that the school district was a statutory entity with limited authority and could neither sue nor be sued unless authorized by statute. Id. at 226. On appeal, this Court held that the Grenada Municipal Separate School District was expressly and impliedly authorized to file suit. Id. at 227. The Court relied on Miss. Code Ann. § 11-45-11 (1972) which states "the state shall be entitled to bring all actions and all remedies to which individuals are entitled in a given state or case." The Court held that the school district was an agent of the state, and, therefore, came within the purview of Section 11-45-11. Similarly, in Harrell v. City of Jackson, 229 Miss. 815, 92 So.2d 240, 244 (1957), the Court recognized that a school district is an agent of the state and not of the municipality or county where it is located. The Court stated:
As a general rule, a School District, School Board, or other local school organization is a separate legal entity, and is entirely separate and distinct from a city or town ... . or county; which includes or is included in its territory, whether or not the two are coterminus, and even though they have some officers in common.
Id. 92 So.2d at 244 (quoting § 78 C.J.S.; Schools and School Districts, § 25, p. 661) See also Frazier v. State By and Through Pittman, 504 So.2d 675, 699 (Miss. 1987).
Taken together, Grenada and Harrell stand for the proposition that the school district, being an agent of the state, has within its authority all actions and all remedies to which an individual is entitled. Likewise, in the case sub judice the Harrison County Board of Education, being an agent of the state, has the authority to object to the proposed annexation pursuant to Section 11-45-11.
These things said, we hold that the pleadings of the Harrison County Board of Education are adequate to establish that it is a party interested in, affected by or aggrieved by the pending annexation of the City of Biloxi within Section 21-1-31. Beyond that, we hold that the School Board has the authority to exercise its standing and to employ counsel and to participate fully in the Biloxi annexation confirmation proceeding.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER and ANDERSON, JJ., concur.
HAWKINS, P.J., dissents by separate written opinion, joined by SULLIVAN, J.
PITTMAN and BLASS, JJ., not participating.
HAWKINS, Presiding Justice, dissenting:
On December 15, 1987, the City of Biloxi filed a petition in the chancery court of the second judicial district of Harrison County to approve its ordinance expanding the city's corporate limits.
On February 2, 1988, the City of Gulfport filed a petition in the chancery court of the first judicial district of Harrison County to approve its ordinance expanding the city's corporate limits.
Different chancery judges were assigned these cases.
On March 14, 1988, pursuant to its own order, and obstensibly for and on behalf of Harrison County, the board of supervisors filed a full blown answer in each court contesting the expansions of both cities.[1]
Upon motion of the City of Gulfport, the chancellor dismissed the county because it was not a party in interest as contemplated by Miss. Code Ann. § 21-1-47. In the City of Biloxi's petition in the second judicial district of Harrison County, the chancellor on his own motion dismissed the County, noting:
Harrison County urges that the provision of Section 21-1-31, Mississippi Code *790 of 1972, which states that "... all parties interested in, affected by, or being aggrieved by said proposed enlargement or contraction, shall have the right to appear at such hearing and present their objection," permits the county to participate as an objector. County governments and county school districts, however, have only limited authority. Such authority as they have must exist either by constitutional provision or by an act of the State Legislature, and no such authority is to be found. Had the legislature intended that counties or any other local agencies of government would be able to object to a municipal annexation proceeding, the legislature would have included not only "another city within three miles" but also the county and other local agencies of government. Significantly, it did not. In this respect, the legislature has exercised its control of this subject an has not delegated to the counties or to county school districts the authority to oppose annexation proceedings.
It is not difficult to understand that the legislature could well have concluded that it did not want local arms of government at war with one another over political turf, and all of this at the expense of the local taxpayers. Confidence in our political system could be severely tested if residents of an annexing city are forced to pay both for the annexation effort by their city government and for the resistance to that effort by their county government. If, indeed, the legislature decides at some point to let local government treasuries be used to fund internecine political warfare, a simple amendment to Section 21-1-32, can provide such authority.
I would affirm the action of both chancellors in dismissing Harrison County as a party.
No one doubts that counties, municipalities, school districts must have a right to go to court for trespasses and injuries to property, to enforce contractual rights, to secure property or funds rightfully belonging to the political subdivision, or even to take legal action to protect themselves from an encroachment by another legal entity which will prevent, diminish or impede their functioning as a legal entity. This clearly would be for a public purpose, and an expenditure upon an "object authorized by law." Howe v. State, 53 Miss. 57 (1876).
In oral argument this was well demonstrated by counsel for the Harrison County School District, the school district outside the Gulfport and Biloxi municipal school districts. He stated to the Court that if adding to the corporate limits of Biloxi and Gulfport meant inclusion within their respective municipal separate school districts of part of the Harrison County School District, and removal of the territory from the county district's jurisdiction, then the county district was harmed. This would put the county district in the same posture as the county school district in Western Line Consolidated School District v. Greenville, 465 So.2d 1057 (Miss. 1985).
On the other hand counsel candidly conceded that if Miss. Code Ann. § 37-7-103 (Miss. Code Ann. § 37-7-611 repealed, Ch. 492, § 47, Laws 1986) is in effect, and the Harrison County School District's boundary will not be changed by the corporate expansions, then the county school district's objection vanishes. In re: Enlargement of Booneville, 551 So.2d 890 (Miss. 1989).
Even an adjoining county might very well have a right to go into court to object to a proposed annexation of part of its county into a municipality from an adjoining county. We do not have this question in this case, however, and need not address it. This is not such a case as City and County of Denver v. Miller, 151 Colo. 444, 379 P.2d 169 (1963); DeKalb County v. City of Atlanta, 132 Ga. 727, 65 S.E. 72 (1909).
Harrison County will neither be enlarged nor diminished by the corporate expansions as finally approved by the chancery court, if indeed they are approved at all. Moreover, its county government will remain the same regardless of the outcome of the cities' chancery court petitions. True, it *791 may very well have some of its expenses lowered by functions taken over by the cities, such as streets, sewerage, garbage collection which in turn will reduce the county's tax burden. And, if there is too much duplication of some services citizen taxpayers may, and should protest. Yet the county government itself will not be impeded in the slightest by any corporate annexation. The same county powers, responsibilities and rights will exist as before the annexation.
Some county supervisors may not desire having their road responsibilities lightened because it will mean they do not employ as many people, and have no need to spend as much money on machinery, concrete, steel, culverts, gravel and lumber. Economic need and power should not be confused with statutory or lawful power, however. Surely courts are not interested in promoting or preserving the political power a particular office holder has because of the people he employs or money he spends. And surely a county supervisor should neither be permitted to nor encouraged to protect his own political power by spending public money. If he wants to do this, spend his own money. Nothing has prevented these supervisors spending their own money to contest these expansions.
This is all this intervention by the county is, an attempt by individual office holders to hold onto more economic power and yet unwilling to spend their own money to do it.
The supervisors say that they are protecting the individual taxpaying citizens (which argument the majority has swallowed). This is specious, as well as no justification whatever to spend public money. If county property owners do not want to be within a city (and if I lived there I might very well not want to either), they should band together and employ counsel and resist it, not ask every taxpayer in Harrison County to pay for their fight. By what right do they have to demand (if indeed the county taxpayers have done so) that the county government pay this expense? Some county property owners in past years have had supervisors build and gravel driveways, field roads and lay out subdivisions for them, too, but public outcry and outrage have radically curtailed such illegal expenditures. Now, thanks to the majority, expenditures which the state auditor might otherwise challenge as being for a private purpose and illegal have been given the highest blessing possible. The Mississippi Supreme Court has endorsed them as perfectly valid and legal.
It should be perfectly plain that the employment by the board of supervisors of Harrison County of lawyers to protect their own political and economic power under the argument that they are "protecting the county taxpayer" is no more valid than laying out and building roads and bridges on private property.
No doubt laying out subdivisions, building driveways, field roads and bridges with public, taxpayers' money helped create in hundreds of instances political bosses. A supervisor rendering such services to taxpayers in his district enormously enhanced his political power. Those days are over. But the Mississippi Supreme Court has told the boards of supervisors you can salvage or re-establish some of your economic and political power by paying disgruntled property owners' legal fees out of the public treasury to fight any municipal expansion.
If this is not illegal, void and against public policy, then what is?
The majority has given a lengthy exposition of authority by political subdivisions generally to go to court, but ignored and missed the point of this case entirely: that the public treasury is funding legal fees to help individual supervisors and private property owners. This should never be classified as an "object authorized by law."
No law book is needed to detect the violation of public policy in this action by the Harrison County board of supervisors. You do not even need to be a lawyer. An unimpaired olfactory sense will suffice.
In St. Louis County v. Village of Peerless Park, 726 S.W.2d 405, 409 (Mo. App. 1987), the Missouri Court of Appeals responded as follows to the same argument made here by Harrison County:

*792 County's only contention that it is adversely affected relate to loss of revenue and loss of power to control development. Neither is adequate to confer standing on the County.
With regard to the issue of loss of revenue County has failed to demonstrate that the loss has led to any adverse impact. The tax revenues formerly received from the annexed area were used to provide services to the annexed area that are now being provided by Peerless Park. The County's loss of revenue is therefore not an actual loss at all because the County has failed to demonstrate that the loss of revenue has not been offset by a decline in the need for County services and a consequent decline in costs to County.
The County also cannot base standing on a loss of power. As noted in Town and Country, supra at 606, governments exist to serve their citizens and not to conserve their own power. The fee owners in the annexed area chose to be governed by Peerless Park. The County's power over the area existed for the benefit of those owners and not for the benefit of the County's power base. We therefore refuse to find that the County's loss of power over the area constituted a sufficient direct adverse effect on its rights, status or other legal relations to constitute a ground for standing.
Neither to me is it much of an answer for this Court to intimate that well, if the people do not approve of this dissipation of public funds they can vote the supervisors out of office at the next election. The same lame answer could be given for any other malfeasance or squandering of public money.
Long ago this Court stated in Howe v. State, supra, at 69:
A board of supervisors has no right to appropriate the money of the county to any object not authorized by law. Such appropriation is void.
* * * * * *
Boards of supervisors are constituted for the protection of the county, and not to swindle it. What they do in accordance with law is valid, and all beyond is void.
The majority has vastly broadened the range of "objects authorized by law." If some citizen in the county will receive financial benefit, then it is an "object authorized by law" in which to pour public funds.
This is another example of the propensity of the Mississippi Supreme Court of late to grant interlocutory appeals. We highlight an issue on this interlocutory appeal which following a full-blown hearing could form a very small piece of a very large mosaic.
Another unfortunate current fact of life is the enormous legal expenses counties and municipalities incur in legal fees defending actions in federal court. In a vast number of federal court cases, the taxpayers in the end are required to pay legal fees on both sides. At least in the federal courts, however, the award of attorney fees to the plaintiffs is a congressional, legislative requirement. 20 U.S.C.A. § 1617; 42 U.S.C.A. § 1973l(e). Here the load on the taxpayers, requiring them to pay the legal fees on both sides, is a judicial mandate.
In City of Jackson v. City of Ridgeland, 551 So.2d 861 (Miss. 1989), and In re: Enlargement of Booneville, 551 So.2d 890 (Miss. 1989), we did a pretty good job erasing carefully structured guidelines to chancellors in determining whether a proposed municipal expansion was reasonable and necessary. And now we turn full-blown adversarial legal mercenaries loose at one another, all 100% paid for by the taxpayers of Biloxi, Gulfport and Harrison County, with the chancellors having very little consistent guidance in determining what is "reasonable."
I would affirm both chancellors, and I respectfully dissent.
SULLIVAN, J., joins this opinion.
NOTES
[1] Finch v. Mississippi State Medical Association, Inc., 585 F.2d 765, 771 (5th Cir.1978), relied upon so heavily by City of Gulfport is inapposite as it enforces the restrictive federal rule of standing. States generally have been more permissive on the point. One reason for this dissimilarity is the federal concept of "case or controversy" derived from U.S. Const. Art. III, § 2. The Mississippi Constitution has no case or controversy clause.
[2] In annexation proceedings, the Mississippi Rules of Civil Procedure should be enforced only where they do not conflict with procedural rules provided by statute. See Rule 81(a)(11), Miss.R.Civ.P.; In re City of Ridgeland, 494 So.2d 348, 354 (Miss. 1986). Accordingly, we look to Section 21-1-31 and only secondarily to Rules 17 and 24, Miss.R.Civ.P.
[3] Cf. City of Pascagoula v. Scheffler, 487 So.2d 196, 198 (Miss. 1986) (in action for incorporation of unincorporated area to form City of Gautier, nearby City of Pascagoula held a "person interested in, affected by, or having objections to the proposed incorporation" and thus having standing to object).
[4] Compare Miss. Code Ann. § 19-3-47(1)(b) (Supp. 1989).
[5] § 19-3-40. Power of board to adopt, modify, alter, or repeal orders, resolutions or ordinances not inconsistent with law.

[Through June 30, 1990, Section 19-3-40 shall read as follows:]
(1) the board of supervisors of any county shall have the power to adopt any orders, resolutions or ordinances with respect to county affairs, property and finances, for which no specific provision has been made by general law and which are not inconsistent with the Mississippi Constitution, the Mississippi Code of 1972, or any other statute or law of the State of Mississippi; and any such board shall likewise have the power to alter, modify and repeal such orders, resolutions or ordinances. Except as otherwise provided in subsection (2) of this section, the powers granted to boards of supervisors in this section are complete without the existence of or reference to any specific authority granted in any other statute or law of the State of Mississippi.
Such orders, resolutions or ordinances shall apply countywide except when the governing authorities of any municipality situated within a county adopt any order, resolution or ordinance governing the same general subject matter. In such case the municipal order, resolution or ordinance shall govern within the corporate limits of the municipality.
(2) This section shall not authorize the board of supervisors of a county to (a) levy taxes other than those authorized by statute or increase the levy of any authorized tax beyond statutorily established limits, (b) issue bonds of any kind, (c) change the requirements, practices or procedures for county elections or establish any new elective office, (d) use any public funds, equipment, supplies or materials for any private purpose, (e) regulate common carrier railroads, (f) grant any donation, or (g) without prior legislative approval, regulate, directly or indirectly, the amount of rent charged for leasing private residential property in which the county does not have a property interest; unless such actions are specifically authorized by another statute or law of the State of Mississippi.
We hold above that Harrison County has been authorized to proceed in this matter by a combined reading of Miss. Code Ann. §§ 11-45-17, 11-45-19, and 19-3-47(1)(b) (1972 and Supp. 1989). Any possible doubt of the matter has been removed by the enactment of Section 19-3-40.
[6] The Chancery Court's opinion is directed principally to whether Harrison County may appear and object. It appears clear from the opinion that the rationale for dismissing the school district is the same, that is, that there is no legislative authority granting the school board the power to appear and object in annexation proceedings.
[1] Gulfport seeks to expand its present boundaries from 29.36 to 83.01 square miles, almost tripling its present geographical size. One cannot help but wonder if this is a case of sublimated avarice, which encourages the type of reaction it got from the board of supervisors.